**UNIVERSITY OF ALASKA, Appellant,**

v.

**THOMAS ARCHITECTURAL PRODUCTS, INC., Appellee.**

No. S–5803.

Supreme Court of Alaska.

Dec. 1, 1995.

Rehearing Denied Jan. 5, 1996.

Gerard R. LaParle, Guess & Rudd, Fairbanks, for Appellant.

Andrew Guidi, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

## I. INTRODUCTION

The University of Alaska (the University) brought suit against Thomas Architectural Products, Inc. (TAP), a dissolved Washington corporation. TAP successfully moved for a Civil Rule 12(b)(6) dismissal in superior court, citing a Washington statute which requires that actions against dissolved corporations be initiated within two years of the date of dissolution. The University appeals. We reverse.

## II. FACTS AND PROCEEDINGS

The relevant facts of this case are not in dispute. The University entered into a contract to have its Statewide Office Building constructed. TAP, a subcontractor on the project, supplied the general contractor with building panels made by a third-party manufacturer. On August 25, 1988, Washington's Secretary of State administratively dissolved TAP for failure to file the required annual report and license renewal.

The University claims that in May 1990, it became aware that the panels were defective.[1] In October 1991, the University filed suit against TAP and other parties to the contract, alleging breach of implied warranty and strict liability for the defective building panels. TAP moved to dismiss the University's complaint, basing its motion on Washington Revised Code 23B.14.340, which contains a two-year abatement of claims provision in favor of dissolved corporations. The court granted TAP's motion to dismiss.

The University filed a Civil Rule 60(b)(1) motion to reinstate TAP as a defendant. The University argued that the court's dismissal of TAP had been based on a statutory scheme that went into effect after the delivery of the panels and TAP's dissolution. The University also claimed that under the older statute, Washington Revised Code

23A.28.250, *repealed by* 1989 Wash.Laws, ch. 165, § 204, an administratively dissolved corporation such as TAP could not seek protection under the two-year abatement of claims provision. TAP responded that the dismissal was correct under either version of the statute. The court denied the University's motion to reinstate, and granted TAP's motion for entry of Civil Rule 54(b) judgment dismissing it from the case. This appeal followed.

## III. DISCUSSION

### A. Whether the University May Bring Suit Against TAP Is a Question of Washington Law

■ The University asks this court to apply Alaska law in determining whether a suit against TAP could properly be filed in October 1991. TAP responds that the application of Washington law is compelled by Alaska Civil Rule 17(b), which provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."[2]

Although not an Alaska case, *Johnson v. Helicopter & Airplane Servs. Corp.*, 404 F.Supp. 726 (D.Md.1975), demonstrates that Washington law governs the question of whether TAP was amenable to suit at the time the University filed its complaint. Pursuant to Federal Civil Rule 17(b),[3] *Johnson* applied Delaware law to the question of whether a dissolved Delaware corporation that had done business in New York had the capacity to be sued in New York. As the court explained, Rule 17(b) is meant to create uniformity across jurisdictions; its intended result is that "once a corporation is determined to have capacity to be sued in its original place of business, it may be sued in any ... court." 404 F.Supp. at 729. The court specified:

1. There is some dispute about the time of the University's discovery of the allegedly faulty panels, but this fact does not affect the resolution of the case.

2. TAP also argues that the University has waived the argument that Alaska law applies here. We do not reach TAP's second argument since we

conclude that Rule 17(b) requires the application of Washington law.

3. The portion of Alaska's Rule 17(b) at issue here is identical to the portion of the Federal Rule, which was applied by the court in *Johnson*.

[i]f under the law of Delaware a corporation is organized and under the law of its domicile, Delaware, it has the capacity to sue or be sued, then it can be sued or sue anywhere, and if it has not any capacity to sue or be sued under the law of its domicile, it cannot sue or be sued anywhere.

*Id.* at 730 n. 2 (quoting *Hearings Before House Comm. on the Judiciary,* 75th Cong., 3d Sess., ser. 17, at 20 (1938)) (quotation omitted).

Rule 17(b) therefore requires us to look to Washington law to determine whether TAP had the capacity to be sued when the University filed its complaint. *See also United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 746 (8th Cir.1986), *cert. denied* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (applying law of domicile, per Rule 17(b), to determine dissolved corporation's capacity to be sued); *Johnson v. RAC Corp.,* 491 F.2d 510, 512 n. 3 (4th Cir.1974) (noting that Rule 17(b) is restatement of "firmly established" principle that law of state of incorporation governs dissolved corporation's ability to sue or be sued); *Showers v. Cassiar Asbestos Corp.,* 574 F.Supp. 322, 323 (E.D.Pa.1983); *Newmark v. Abeel,* 102 F.Supp. 993, 993 n. 1 (S.D.N.Y.1952); *Casselman v. Denver Tramway Corp.,* 195 Colo. 241, 577 P.2d 293, 295 (1978).

B. *TAP's Failure to Comply with Wind-up Requirements Made It Susceptible to Suit by Known Creditors Who Did Not Receive Notice of Dissolution*

■ At common law, the dissolution of a corporation was its civil death; dissolution immediately abated all actions by and against a corporation, and ended its capacity to sue or be sued. *Johnson,* 404 F.Supp. at 730 (citing *Melrose Distillers, Inc. v. United States,* 359 U.S. 271, 272, 79 S.Ct. 763, 764, 3 L.Ed.2d 800 (1959)). This common law regime has been supplanted in Washington, as in other states, by a statute which prolongs the life of a corporation in order to allow it to settle its affairs, and to allow its creditors to recover what is owed to them.

The version of Washington's survival statute applicable here provided, in relevant part:

The dissolution of a corporation either: (1) By the issuance of a certificate of dissolution by the secretary of state, or (2) by a decree of court, or (3) by expiration of its period of duration shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution.

Wash.Rev.Code 23A.28.250, *repealed by* 1989 Wash.Laws, ch. 165, § 204.[4]

TAP's dissolution was achieved by a means not mentioned in the survival statute—a "certificate of administrative dissolution" (CAD). CADs effectuate involuntary dissolutions, which are initiated by the secretary of state against corporations guilty of such infractions as failing to file an annual report or pay taxes. Wash.Rev.Code 23A.28.125. Since .250 does not explicitly state that a two-year survival period begins to run when a CAD is issued, the University argues that TAP's CAD "[did] not trigger the abatement of claims provision contained in [Washington Revised Code] 23A.28.250."

1. *An administratively dissolved corporation's capacity to be sued is governed by the survival statute*

Washington case law indicates that a corporation is effectively dissolved immediately upon the issuance of a CAD. For example, *Zimmerman v. Kyte,* 53 Wash.App. 11, 765 P.2d 905 (1988), states that "[w]hen a corporation is dissolved administratively, it ceases to exist." *Id.* 765 P.2d at 909 (citing Wash. Rev.Code 23A.28.125(3)). In *Zimmerman,* the Plaza Drug Corp. (Plaza) and the Zimmermans, two shareholders, brought a tort suit against Kyte. During the proceedings the Zimmermans substituted themselves as

---

4. All cites hereafter to the Washington Code refer to provisions in effect in 1988, at the time of TAP's dissolution.

the sole plaintiffs in the case. A month later, Plaza was administratively dissolved by the secretary of state. Kyte later attempted to dismiss the Zimmermans from the case, arguing that only Plaza possessed the cause of action against her. One of the court's reasons for allowing the Zimmermans to proceed was that when Plaza was administratively dissolved by the secretary of state, the corporation immediately ceased to exist, and all its assets flowed automatically to the Zimmermans as shareholders. 765 P.2d at 909.

The University contends that "the rationale of *Zimmerman* was refuted only a year later in *Inducon Corp. v. Crowley Maritime Corp.*, 53 Wash.App. 872, 771 P.2d 356 (1989), *review denied*, 113 Wash.2d 1002, 777 P.2d 1050 (1989)." We disagree.

Inducon Corp. was administratively dissolved for failure to pay license fees. The following year, it initiated a lawsuit. The defendants moved for summary judgment under 23A.44.120, which provided that a corporation that had any overdue state fees could not commence or maintain a lawsuit. Inducon contended that 23A.28.125(5) allowed it to file suit despite its delinquent status. The latter statute provided:

> Prior to such [administrative] dissolution the corporation's existence will not be affected nor will any of its rights, duties and obligations be impaired, *except as otherwise provided in RCW 23A.44.120.*

Wash.Rev.Code 23A.28.125(5). The court noted the obvious: Inducon could not rely on 23A.28.125(5) to gain relief from 23A.44.120, because .125(5) explicitly provided that .120 remained applicable to corporations undergoing administrative dissolution. 771 P.2d at 357. Thus, *Inducon*'s holding is simply not relevant to the task before us. The *Inducon* court ruled on the interrelation of 23A.44.120 and 23A.28.125(5), and we are called upon to construe 23A.28.250, which was directly construed by the *Zimmerman* court.

Both parties to this dispute cite a final Washington case, *Pacesetter Real Estate, Inc. v. Fasules*, 53 Wash.App. 463, 767 P.2d 961 (1989). In that case, Pacesetter defaulted on two promissory notes, and then, in response to foreclosure, successfully sued on the ground that the notes were usurious. On appeal the note-holder challenged Pacesetter's standing to sue because (1) the corporation was out of compliance with 23A.44.120 (requiring payment of all fees before a corporation may initiate litigation) and (2) because it had been administratively dissolved nearly four years earlier. The court found for the note-holder on the first claim, making the rest of the opinion dicta. Nevertheless, the opinion contains a substantial amount of analysis cited by the parties.

The University points to the following statement by the *Pacesetter* court:

> While the Legislature expressly provides for administrative dissolution following a corporation's failure to pay annual license fees, and further provides for timely reinstatement following such dissolution, it fails to provide direction as to the status of a corporation so dissolved. Early Washington case law, however, holds a corporation's failure to apply for reinstatement within the time permitted results in irrevocable dissolution.

767 P.2d at 964–65 (footnotes omitted). The University infers from this that TAP should be considered truly dissolved, and the two-year survival period should begin to run, only after the point at which the corporation can no longer "cure" the reason for its administrative dissolution and gain reinstatement. Under 23A.28.127, this occurs two years after the issuance of the CAD. Thus, under the University's proposed interpretation, an administratively dissolved corporation could be sued up to four years after receiving a CAD—a deadline that would allow the University's suit in this case.

But the University's conclusions are belied by another passage from the same opinion:

> [F]rom December 30, 1983, Pacesetter or any of its creditors had 2 years to initiate an action arising from predissolution transactions. Here, Pacesetter and [shareholders] filed this action on September 25, 1987.... Since Pacesetter failed to comply with the 2–year reinstatement period, it lacks standing to bring this action.

767 P.2d at 964–65. This passage clearly refutes by implication the University's argument that the survival statute does not begin

to run until the two-year reinstatement period for administratively dissolved corporations has expired. If the University were correct, then Pacesetter would have been able to file suit. Instead, despite the fact that Pacesetter sued less than four years from the date of its dissolution, it was deprived of the benefits conferred by the survival statute.

### 2. *An administratively dissolved corporation is subject to wind-up requirements*

■ The University also argues that TAP was subject to provisions of the code requiring a dissolved corporation to wind up its affairs. We agree.

Notably, the three Washington cases on which the parties rely all deal with an administratively dissolved corporation or its successor which sought to bring an action more than two years after dissolution. While these cases conclusively establish that the two-year survival statute is applicable to administratively dissolved corporations, they do not address the question of what wind-up provisions are applicable to such a corporation, or whether failure to properly wind up the corporation's affairs tolls this limitations period.

Washington's relevant statutory provisions set forth the conditions upon which the secretary of state should administratively dissolve a corporation, the notice requirements to do so, and the means by which a corporation can seek reinstatement. Wash.Rev.Code 23A.28.125–.127. However, the statutes are silent as to what an administratively dissolved corporation must do if it does not seek reinstatement. While corporations undergoing voluntary dissolution must notify creditors of the dissolution, discharge existing debts and obligations, and distribute remaining corporate property, Wash.Rev.Code 23A.28.060, there are no express requirements for administratively dissolved corporations.

We can either view this incongruity as a deliberate decision by the Washington legislature to treat the two types of dissolution differently, or attribute it to legislative oversight. We conclude that Washington courts would determine that the latter is more plau-

sible, and that the legislature intended to subject administratively dissolved corporations to wind-up requirements.

We reach this conclusion primarily because Washington law obligates us to "avoid a literal reading [of a statute] resulting in unlikely, absurd or strained consequences.... A statute should be construed in light of the legislative purposes behind its enactment." *State v. Day,* 96 Wash.2d 646, 638 P.2d 546, 547 (1981) (en banc). As one Washington court noted in a context analogous to the one before us, "it would be absurd to conclude that after being dissolved for nonpayment of fees, a corporation would be rewarded." *Inducon Corp.,* 771 P.2d at 358. TAP's reading of the statute would result in just such an "absurd" reward. Allowing a corporate board to walk away from an administratively dissolved corporation would deliver all of the benefits of the dissolution statute to a corporation without any of the protections which the statute provides to creditors. It would also create an incentive for corporations to avoid the orderly procedures set forth in the voluntary dissolution provisions in favor of a "quick exit" by administrative dissolution. In other words, TAP's reading would undermine the entire structure of Washington's corporate dissolution statutes.

An examination of the historical development of Washington's corporate dissolution scheme reinforces our conclusion that administratively dissolved corporations are subject to wind-up requirements. Before 1980, corporate dissolution in Washington could be accomplished only by court order. *See* Wash.Rev.Code 23A.28.130 (1969) (involuntary dissolution); Wash.Rev.Code 23A.28.220 (1969) (decree of involuntary dissolution). The superseded Washington code from this era contains a form document to be employed by courts which executed a decree of involuntary dissolution. This "Form of Decree of Dissolution" indicates that before the court dissolved a corporation it would satisfy itself that "all debts, obligations, and liabilities of the ... Corporation[ ] have been paid and discharged." Wash.Rev.Code 23A.28.220 at 374 (1969).

Thus, under Washington's pre–1980 regime of involuntary dissolution, a mechanism

existed to ensure that such dissolved corporations had wound up their affairs.[5] There is no indication in this history that the Washington legislature ever intended to exempt involuntarily dissolved corporations from the wind-up requirements to which they had traditionally been subject through court supervision, and which voluntarily dissolved corporations were explicitly required to undergo.

■■■■ Having concluded that an administratively dissolved corporation must wind-up its affairs in the same manner as a voluntarily dissolved corporation, it is still necessary to determine what effect TAP's failure to do so would have on the two-year survival of claims. Although there are no Washington cases on point, other courts have held that the abatement of claims provision is ineffective with regard to claims by creditors who did not receive required notice. *See Department of Social Servs. v. Winyah Nursing Homes, Inc.*, 282 S.C. 556, 320 S.E.2d 464, 468 (App.1984) ("Failure to strictly comply with the mandates of the dissolution statutes effectively continues the corporation with respect to creditors whose rights are prejudiced by the noncompliance."); *Alpine Property Owners Ass'n, Inc. v. Mountaintop Dev. Co.*, 179 W.Va. 12, 365 S.E.2d 57, 64–65 (1987); *cf. Licht v. Association Servs., Inc.*, 236 Neb. 616, 463 N.W.2d 566, 569–70 (1990) (holding that where employee was aware of dissolution, abatement of claims provision applied even in absence of written notice because employee had actual notice).

Having reviewed the record, it is unclear whether the University would have been entitled to notice. On the one hand, a potential tort claimant is arguably not a known creditor. Otherwise, a corporation would have to contact every person or entity to whom it

had sold a product, as each is a potential product liability plaintiff. However, the record contains a letter from the general contractor, KHO, providing "written notice to Thomas Architectural that there were serious problems with the building panels." In light of this letter, we conclude that whether or not the University was a "known creditor" is an unresolved question.

Thus, we conclude that the abatement of claims provision is generally applicable to bar claims against a corporation brought more than two years after it is administratively dissolved. However, if the University was a known creditor and TAP failed to notify the University of its dissolution, this provision would not bar a claim against TAP. We therefore remand this case to the superior court for a determination of whether the University was a known creditor.[6]

## IV. CONCLUSION

TAP's capacity to be sued is a question of Washington law. TAP was subject to the wind-up requirements found in the Washington corporations code. If the University was a known creditor and TAP failed to notify the University of its dissolution, then this suit is not barred by the abatement of claims provision in Washington's survival statute. We REVERSE and REMAND this case so that the trial court can determine whether this was so.

EASTAUGH, J., not participating.

---

5. We also note that the current Washington code contains a wind-up procedure, established in 1989, that applies to voluntarily and involuntarily dissolved corporations alike. *See* 1989 Wash. Laws ch. 165, § 159 (codified at Wash.Rev.Code 23B.14.060 (1994)).

6. TAP argues that even if it remains susceptible to suit, the University's strict liability claims are barred under the terms of the survival statute because they accrued after dissolution occurred. We disagree with the premise of this argument. The elements of a tort are complete when there has been an invasion of a legally protected inter-

est of the plaintiff. *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 539 (Alaska 1968). In this case, the University allegedly suffered an economic injury, which occurred and completed the elements of a tort when the University purchased the defective building panels. The date of this injury is not altered by the fact that the University may not have discovered that the panels were defective until 1991. As TAP concedes, delivery of the panels took place before TAP's August 1988 dissolution. It follows that the University's strict liability claims accrued before TAP's dissolution.