**NORTHWEST MEDICAL IMAGING, INC., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.**

No. S–11984.

Supreme Court of Alaska.

Dec. 29, 2006.

Robert K. Reges, Jr., Reges & Boone, LLC, Douglas, for Appellant.

Michael A. Barnhill, Assistant Attorney General, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

May Alaska tax a corporation that was administratively dissolved by its state of domicile but that continued to conduct business in Alaska? The corporation says no. First, it asserts that no court has subject matter jurisdiction to determine whether taxes may be assessed on a dissolved corporation. Because Alaska courts have subject matter jurisdiction to determine the taxability of corporate entities, we reject this jurisdictional challenge.

Second, the corporation argues that the State of Alaska may not tax a corporation that has been administratively dissolved by another state. The Office of Tax Appeals agreed, concluding that, because the corporation had been dissolved in Washington, it no longer existed for tax purposes in Alaska. Because Alaska courts have subject matter jurisdiction to determine taxability of corporations operating in this state, and because the corporation did not cease to exist for Alaska corporate income tax purposes, we affirm the superior court's decision to reverse the Office of Tax Appeals.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Northwest Medical Imaging, Inc. (Northwest Medical) was incorporated under the laws of the State of Washington in 1988. Dr. James Pister was the sole director and shareholder of the corporation. Effective February 21, 1990, the corporation was administratively dissolved by the State of Washington for failure to file its initial list of officers and directors and for failure to pay the annual license fee required by the state. The parties have stipulated that Dr. Pister did not become aware of this dissolution until December 1998.

Despite its administrative dissolution Northwest Medical continued to act as a corporation between 1990 and 1998. Corporate actions included entering written contracts in the name of the corporation to provide radiology services to health care organizations and hospitals; contracting with service providers such as accountants, financial consultants, and lawyers; contracting with medical organizations; maintaining a corporate checking account in Alaska; filing Alaska and federal corporate income tax returns; leasing a vehicle in the corporate name; and filing the underlying appeal of the tax deficiency assessed by Alaska for corporate income taxes. Dr. Pister admitted during argument before the Office of Tax Appeals that business transactions were conducted under the name Northwest Medical Imaging, Inc. for the period 1990 through 1998.

In 1999 Northwest Medical's accountants learned of the corporation's administrative dissolution. Upon learning of the dissolution, Dr. Pister instructed the accountants to "wind up" the corporate accounts and tax filings as existing contracts expired. By 2000 all of the corporate contracts had expired except one. Dr. Pister sold that contract and stopped doing business under the name Northwest Medical Imaging, Inc.

The Alaska Department of Revenue now seeks to collect state corporate income taxes for business conducted by between 1991 and 1995. The department claims the corporation owes the state $88,665 in taxes, plus interest and penalties. Northwest Medical argues that it was not subject to Alaska corporate taxes for the years following its dissolution.

### B. Procedural History

The Office of Tax Appeals (the Office of Tax Appeals or OTA) concluded as a matter

of law that once Northwest Medical was dissolved, it could no longer be considered a corporation for purposes of assessing corporate income taxes. OTA determined that, post-dissolution, Northwest Medical lacked the characteristics necessary for classification as a corporation for income tax purposes. Accordingly, OTA abated the tax assessment against the corporation.

Upon the department's appeal, the superior court reversed and remanded. The superior court first noted that the purported dissolution was supported by fairly weak evidence, including an undated document from the Washington Secretary of State's office, representations of counsel that the corporation was dissolved, references to the State of Washington's web page, and a computer print-out, apparently from that web page. The court held that the finding of administrative dissolution on the basis of this evidence was premature. The court also determined that, even if the dissolution was effective, OTA's legal conclusions were flawed. In contrast to OTA, the superior court concluded that a dissolved corporation may continue to exist as a corporation, depending on the factual situation presented. The superior court remanded for OTA to consider whether Northwest Medical could be subject to taxation despite its dissolution.

On remand, OTA again concluded that the corporation did not exist for tax purposes from 1991 to 1995. Applying Washington law, it determined that Northwest Medical had been effectively dissolved on February 21, 1990—the date on which the certificate of administrative dissolution was issued. It then concluded that, under Washington law, the corporation legally ceased to exist as of the date of administrative dissolution. It further stated that under federal law, the corporation ceased to exist when it was administratively dissolved under Washington law. According to OTA, because the corporation ceased to exist immediately upon dissolution, it did not exist for tax purposes after 1990. Thus, OTA abated the taxes and penalties assessed against Northwest Medical for tax years 1991 through 1995.

The Department of Revenue again appealed. Northwest Medical filed a motion to dismiss the department's appeal on the ground that it was untimely. The superior court denied the motion to dismiss, holding that although the state failed to appeal within thirty days of service of OTA's decision, a conflicting statute justified relaxation of the thirty-day limit of Appellate Rule 602. Alaska Statute 43.05.480(a) provides that appeals of tax agency decisions must be filed within thirty days of the date the decision becomes final, and AS 43.05.465(f) states that such decisions do not become final until sixty days after service, allowing a total of ninety days to appeal.

On the merits, the superior court again reversed OTA, stating:

A business that holds itself out to the Alaskan public as a corporation, files Alaska and federal taxes as a corporation, takes no steps to amend federal corporate tax returns at the same time it is claiming not to be a corporation for Alaska corporate tax purposes, and initiates a tax protest in the corporate name in Alaska may not effectively use its non-payment of corporate taxes in Washington (which at least in part caused dissolution) to avoid corporate taxes in Alaska.

The court explained that, despite Northwest Medical's administrative dissolution, it actively operated as a *de facto* corporation for many years after the effective date of its dissolution. The court held that, despite administrative dissolution by a foreign state, Northwest Medical remained liable for Alaska corporate income taxes. The superior court again questioned the validity of the dissolution, but did not make any specific findings in that regard. It also disagreed with OTA's conclusion that Washington corporations immediately cease to exist after dissolution. Finally, the superior court concluded that, even if Northwest Medical had been administratively dissolved and ceased to exist under Washington law, it still acted as a business entity in Alaska, subjecting it to Alaska corporate taxes.

Northwest Medical appeals. Its principal point on appeal is that the courts of this state do not have subject matter jurisdiction to consider claims brought against a defunct corporation. We conclude that the courts of

Alaska have subject matter jurisdiction to consider the taxability of corporations operating in this state. We hold that OTA erred in concluding that Northwest Medical ceased to exist as a corporate entity for Alaska corporate income tax purposes. Finally, we conclude that the superior court did not abuse its discretion in hearing the case over the corporation's objection that the appeal was untimely.

## III. STANDARD OF REVIEW

■ When the superior court acts as an intermediate court of appeal in an administrative matter, we "independently review and directly scrutinize the merits of the [agency]'s decision."[1] In reviewing the Office of Tax Appeals's decision, we apply the substantial evidence test for questions of fact and the substitution of judgment test for questions of law.[2]

■ Whether an agency acting in a judicial capacity or the superior court has subject matter jurisdiction is a question of law, subject to *de novo* review by this court.[3]

■ We review for abuse of discretion the superior court's decision to waive procedural rules and accept a party's untimely appeal.[4]

## IV. DISCUSSION

We begin our analysis by examining the subject matter jurisdiction of the Office of Tax Appeals, the superior court, and the Department of Revenue. We next consider whether Northwest Medical is liable for corporate income taxes under Alaska law. Finally, we discuss whether the superior court abused its discretion in entertaining the second appeal.

### A. Subject Matter Jurisdiction Was Appropriately Asserted in this Case.

#### 1. The Office of Tax Appeals and the superior court have subject matter jurisdiction.

■ Northwest Medical's primary stated purpose in this appeal is to challenge the subject matter jurisdiction of state adjudicatory bodies over a defunct corporation. This challenge is based on its claim that subject matter jurisdiction is absent because the corporation did not exist for the time period during which the department seeks to tax it.[5]

■ Subject matter jurisdiction is "the legal authority of a court to hear and decide a particular type of case."[6] The doctrine of subject matter jurisdiction applies to judicial and quasi-judicial bodies to ensure that they do not overreach their adjudicative powers.[7] Subject matter jurisdiction is a prerequisite to a court's ability to decide a case: "[A] court which does not have subject matter jurisdiction is without power to decide a case."[8] Under article IV, section 1, of the Alaska Constitution, "The jurisdiction of courts shall be prescribed by law." Thus, where the legislature has authorized a court to enter judgment in a particular class of cases, the court properly has subject matter jurisdiction.[9]

1. *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

2. *State, Dep't of Revenue v. DynCorp*, 14 P.3d 981, 985 (Alaska 2000).

3. *Hydaburg Coop. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996).

4. *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1258 (Alaska 1980).

5. Although Northwest Medical did not raise a jurisdictional challenge until its second appeal to the superior court, subject matter jurisdiction may be raised as an issue at any point during the proceedings. *Hydaburg Coop.*, 925 P.2d at 248.

6. ERWIN CHEMERINSKY, FEDERAL JURISDICTION 257 (3d ed.1999).

7. *See, e.g., Marley v. State, Dep't of Labor & Industries*, 125 Wash.2d 533, 886 P.2d 189, 192 (1994) ("A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate."); *Gilbert v. Gladden*, 87 N.J. 275, 432 A.2d 1351, 1353–54 (1981) (subject matter jurisdiction involves "a threshold determination as to whether the court is legally authorized to decide the question presented").

8. *Wanamaker v. Scott*, 788 P.2d 712, 714 n. 2 (Alaska 1990).

9. *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1011 (Alaska 1995).

■ The jurisdiction of the Office of Tax Appeals to hear tax disputes has been clearly and explicitly prescribed by the legislature. Before OTA's creation, controversies between taxpayers and the Department of Revenue were adjudicated administratively within the department.[10] In 1996 the legislature created OTA, removing the adjudicative role from elsewhere in the department and giving this new "quasi-judicial agency" the duty of resolving tax disputes.[11] Because the issue of whether a corporation exists for tax purposes is just such a tax dispute, OTA has subject matter jurisdiction over the question raised in this case.

■ The superior court acts as an intermediate court of appeal in administrative matters. Alaska Statute 22.10.020(d) declares that the superior court "has jurisdiction in all matters appealed to it from ... [an] administrative agency when appeal is provided by law." Alaska Statute 43.05.480 provides for judicial review of final administrative decisions made by OTA. This statute confers subject matter jurisdiction on the superior court under the present circumstances.

Because OTA and the superior court have subject matter jurisdiction under the relevant statutes, we deny Northwest Medical's jurisdictional challenge.

### 2. The Department of Revenue has jurisdiction to adjudicate tax assessments.

Although Northwest Medical describes its jurisdictional challenge as against OTA and the superior court, it also directs its protest against the Department of Revenue's ability to assess and enforce taxes. Northwest Medical contends that the department lacks judicial authority to levy and enforce tax assessments and penalties.

■ Alaska Statute 43.05.010(7) specifically confers upon the Department of Revenue the authority to "hold hearings and investigations necessary for the administration of state tax and revenue laws." Alaska Statute 43.05.010(8) further grants the department the responsibility to "hear and determine appeals of a matter within the jurisdiction of the Department of Revenue and enter orders on the appeals that are final unless reversed or modified by the courts." [12] The department is also required by AS 43.05.010(14) to "issue warrants for the collection of unpaid tax penalties and interest and take all steps necessary and proper to enforce full and complete compliance with the tax, license, excise, and other revenue laws of the state."

Because the legislature has conferred assessment and adjudicatory duties upon the Department of Revenue, Northwest Medical's jurisdictional challenge against the department must fail.

### B. Northwest Medical Did Not Cease To Exist as a Taxable Corporate Entity.

Although our decision regarding subject matter jurisdiction resolves the only substantive issue that Northwest Medical directly appealed, we may consider issues not preserved for appeal if the issues were raised and briefed below.[13] Both parties have

---

**10.** *State, Dep't of Revenue v. DynCorp,* 14 P.3d 981, 984 (Alaska 2000). *See* former AS 43.05.240.

**11.** *DynCorp,* 14 P.3d at 984. *See* ch. 108, preamble, SLA 1996; AS 43.05.405, AS 43.05.435. AS 43.05.405 provides that "[t]he office of tax appeals has original jurisdiction to hear formal appeals from informal conference decisions of the Department of Revenue under AS 43.05.240."

**12.** AS 43.05.010(8) is limited to informal conference decisions of the Department of Revenue made pursuant to AS 43.05.240 (delineating the procedure by which an aggrieved taxpayer provides the department notice of its grievance).

Formal appeals are heard by the Office of Tax Appeals (AS 43.05.405–.499) or the Office of Administrative Hearings (AS 44.64.030). *See* ch. 163, §§ 62, 97, SLA 2004, amending AS 43.05.010(8) effective July 1, 2005.

**13.** *See, e.g., Alderman v. Iditarod Props., Inc.,* 104 P.3d 136, 141 n. 17 (Alaska 2004) (explaining that failure to include issue in statement of points on appeal does not bar consideration of issue when it has been raised before trial court and fully briefed to this court); *Native Village of Eklutna v. Bd. of Adjustment,* 995 P.2d 641, 646 (Alaska 2000) ("[T]he relevant question is not whether an issue is stated verbatim in a statement of points on appeal, but rather whether the

briefed the underlying question in this case, which is whether the state can tax a dissolved corporation that continues to act as a business. The Office of Tax Appeals and the superior court have both provided careful opinions, but they reach opposite results. In order to resolve this conflict, we address the question whether Northwest Medical ceased to exist as a corporate entity for purposes of taxation by the State of Alaska.

### 1. OTA erred in applying Washington state law to determine that Northwest Medical did not exist for taxation purposes.

OTA asserted that "federal courts consider the statutory and common law of the corporate domicile in determining whether a corporate taxpayer has dissolved and still holds valuable assets." Because Northwest Medical was domiciled in Washington, OTA applied Washington law and concluded that, under that state's law, once the corporation was administratively dissolved it ceased to exist for taxation purposes.

However, OTA mistakenly assessed the extent to which federal courts defer to the law of the domiciliary state. Indeed, the case upon which OTA relied for its assertion that Washington law controlled, *United States v. McDonald & Eide*,[14] actually makes clear that state law is not determinative:

[B]ecause there is no body of federal common law on corporations, analysis of state law is sometimes necessary to fill in the interstices. Nevertheless, state law is not controlling. Reference to the statutory and common law of the corporate domicile may be useful in determining whether a corporate taxpayer has dissolved or still holds assets. The extent of its utility depends, however, on its consistency with the purposes of the federal tax law.[15]

Is the decision of OTA "consisten[t] with the purposes of federal tax law?" Federal Treasury Regulation 1.6012–2(a)(2) (as amended in 2006) governs the cessation of corporate existence for federal tax purposes. The regulation states in part:

A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued.

In other words, dissolution alone is not enough to cause a corporation to cease to exist for tax purposes—the cessation of business and a lack of assets are also required. Because this federal regulation provides clear guidance for determining the existence of dissolved corporations, and hence their taxability, there are no interstices that need be filled by state law. We therefore conclude that OTA erred in relying on Washington law to determine whether Northwest Medical existed for federal, and derivatively Alaska, taxation purposes.

### 2. Because Alaska law adopts federal law regarding corporate taxation, and because under federal law Northwest Medical remained a corporation despite its dissolution, Northwest Medical is subject to Alaska corporate taxes.

Alaska law generally incorporates federal tax law regarding corporations.[16] Accordingly, we must rely on federal law to determine whether Northwest Medical continued to exist for tax purposes after it was administratively dissolved. As noted above, death of a corporation for federal, and hence Alaska, tax purposes requires (1) cessation of business; (2) dissolution; and (3) lack of any retained assets.[17] The Department of Revenue concedes that Northwest Medical was

court and the opposing party are fully informed as to the matter at issue."). *See also* Alaska R.App. P. 204(e): "The appellate court will consider only points included in the statement [of points], and points that the court can address effectively without reviewing untranscribed portions of the electronic record."

**14.** 865 F.2d 73 (3d Cir.1989).

**15.** *Id.* at 76.

**16.** AS 43.20.210(a); AS 43.20.160(c); AS 43.20.300(b).

**17.** Treas. Reg. § 1.6012–2(a)(2) (as amended in 2006).

administratively dissolved in 1990. Thus, to decide whether the corporation remained a corporate entity for tax purposes, we must determine whether it ceased doing business and what assets, if any, it retained.

OTA relied on Washington state law to conclude that Northwest Medical had ceased doing business because, once the corporation was dissolved, it could not enter into any contracts unrelated to winding up and dissolution. Consequently, any new contracts or leases entered into under the corporate name "were rendered Dr. Pister's personal responsibility regardless of the fact that he purported to act for the corporation when he executed them."

OTA also found that Northwest Medical retained only the most minimal of assets after dissolution. According to that office, at the time of dissolution Northwest Medical had no long-term contracts ("because Dr. Pister was providing medical radiology services on a per-job basis") and owned only one Xerox copier, one computer, two or three hand-held tape recorders, and a few medical books, with a total value of $3,600.

OTA looked to *United States v. McDonald & Eide,*[18] *Cold Metal Process Co. v. Commissioner,*[19] and *Commissioner v. Henry Hess Co.*[20] in concluding that, like the corporations in those cases, Northwest Medical had neither sufficient assets nor the ability to conduct business to be liable for federal taxes. Yet, as the superior court noted, each of those decisions involved corporations that had already been fully liquidated, with all debts and assets distributed to the shareholders at the time taxes were assessed.[21] The corporations had ceased all activities in the corporate name by the time tax liability became an issue. In contrast, the present case addresses the situation in which a corporation continues in every respect to act as it previously acted, despite its dissolved status.

Unlike the corporations in *McDonald, Cold Metal,* and *Henry Hess,* Northwest Medical continued to earn income and to make contracts after it was dissolved. The parties stipulated that "business transactions were conducted under the name Northwest Medical Imaging, Inc., including the maintenance and use of bank accounts; contracting with physicians; contracting with service providers such as accountants, financial consultants and lawyers; contracting with medical organizations; and leasing vehicles." These actions indicate that the corporation did not cease its business operations. Under federal law, a corporation does not cease to exist just because it has been dissolved; it must also cease all business activity and divest itself of all assets. Northwest Medical, although dissolved, continued to contract and provide services under its corporate name.

Moreover, contrary to OTA's conclusion, several cases suggest that corporate dissolution does not automatically insulate a corporation from corporate tax liability. OTA failed to address these cases, which were highlighted by the superior court. For example, in *Hill v. Commissioner,*[22] the United States Tax Court stated:

> For federal income tax purposes, the annulment of a corporation's charter does not necessarily have the effect of discontinuing the corporate entity. If a corporation retains assets, even though under State law its legal existence has been terminated and the corporation is in the process of liquidation, it will be treated as a continuing taxable entity.[23]

Similarly, in *Hersloff v. United States,*[24] the Court of Claims explained that "after dissolution the corporation-in-liquidation continues for federal income tax purposes as a taxable entity in those instances in which its affairs are substantially unsettled, it possesses, sells or seeks assets, or its liquidating agents car-

**18.** 865 F.2d 73 (3d Cir.1989).

**19.** 247 F.2d 864 (6th Cir.1957).

**20.** 210 F.2d 553 (9th Cir.1954).

**21.** *McDonald,* 865 F.2d at 74, 76; *Cold Metal,* 247 F.2d at 868; *Henry Hess,* 210 F.2d at 557.

**22.** 66 T.C. 701, 1976 WL 3621 (1976).

**23.** *Id.* at 705.

**24.** 159 Ct.Cl. 366, 310 F.2d 947 (1962).

ry on any substantial activities on its behalf." [25] These cases are more factually relevant than those relied upon by OTA, and they lead to a very different conclusion.

By maintaining active bank accounts; contracting with physicians, service providers, and medical organizations; and leasing vehicles, Northwest Medical continued to conduct business. The outstanding contracts and the leased vehicles constitute significant business assets. Consequently, we hold that, although the corporation was administratively dissolved, it continued to exist for purposes of taxation. OTA erred in holding that under federal and Alaska law Northwest Medical was not taxable post-dissolution.

### 3. OTA's decision would lead to inequitable results.

OTA acknowledged in its first opinion that the result of its decision was undesirable. It stated, "Concluding that NWMI is not liable for Alaska corporate income taxes under these circumstances is troubling because it seems to reward Dr. Pister for conduct that, at best, was negligent with respect to business and tax matters." Nonetheless, OTA held firm to its conclusion, apparently relying in part on the notion that Dr. Pister could be held personally liable for the actions of the dissolved corporation. Citing *White v. Dvorak*,[26] OTA stated that "those new post-dissolution contracts and leases were rendered Dr. Pister's personal responsibility regardless of the fact that he purported to act for the corporation when he executed them."

It is true that the court in *Dvorak* held that the shareholder of an administratively dissolved corporation could sue personally and individually to enforce a contract.[27] However, the court emphasized the fact that the shareholder acted on behalf of the corporation while knowing that it had been dis-

solved.[28] Quoting the relevant statute, it stated, "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this title, are jointly and severally liable for liabilities created while so acting...." [29] The court thus implied that an individual must act knowingly in order to be individually liable. It did not analyze the result if the party was unaware of the corporation's dissolved status.

The Washington Supreme Court addressed that question in *Equipto Division Aurora Equipment Co. v. Yarmouth*,[30] holding that the imposition of personal liability requires actual knowledge that there was no incorporation.[31] In that case the court reversed judgments finding an individual personally liable for debts incurred in the name of a corporation that had been dissolved at the time the contracts were made.[32] In the present case, as in *Equipto*, the sole shareholder, director, and officer of the corporation alleged that he acted in a good faith belief that the corporation was intact.[33] Under the *Equipto* framework, Dr. Pister would not be personally liable for the debts of Northwest Medical because he did not know that the corporation had been dissolved. Consequently, OTA's decision to alleviate the tax burden of the corporation would mean that neither the corporation nor Dr. Pister individually could be held liable for any taxes, despite the fact that the corporation continued to operate and earn income.

We addressed the inequity of such a result in *University of Alaska v. Thomas Architectural Products, Inc.*[34] In that case, Thomas, a subcontractor whose corporation had been administratively dissolved, was sued for providing defective materials.[35] Thomas argued that, because the corporation had been dis-

25. *Id.* at 950.

26. 78 Wash.App. 105, 896 P.2d 85 (1995).

27. *Id.* at 87.

28. *Id.* at 89.

29. *Id.* (quoting WASH. REV.CODE § 23B.02.040).

30. 134 Wash.2d 356, 950 P.2d 451 (1998).

31. *Id.* at 456.

32. *Id.* at 452.

33. *Id.*

34. 907 P.2d 448 (Alaska 1995).

35. *Id.* at 449.

solved, it could no longer be sued.[36] We held that Thomas's failure to comply with statutory wind-up requirements made it susceptible to suit by known creditors who did not receive notice of dissolution.[37] As we explained, "it would be absurd to conclude that after being dissolved for nonpayment of fees, a corporation would be rewarded."[38] "Allowing a corporate board to walk away from an administratively dissolved corporation," we further stated, "would deliver all of the benefits of the dissolution statute to a corporation without any of the protections which the statute provides to creditors."[39] A system that allowed a dissolved corporation to escape its wind-up obligations would create "an incentive for corporations to avoid the orderly procedures set forth in the voluntary dissolution provisions in favor of a 'quick exit' by administrative dissolution."[40]

OTA's decision in the present case would have just such an inequitable result and would create precisely the perverse incentives we sought to avoid in *Thomas*. Northwest Medical would be rewarded for failing to comply with its corporate obligations and responsibilities, including paying the appropriate licensing fees, as well as taxes on income it earned in Alaska while operating under the corporate name.

OTA distinguishes *Thomas* by arguing that the Department of Revenue was not a creditor at the time Northwest Medical was dissolved. OTA focuses on the fact that no tax claims arose before the certificate of dissolution was issued. However, Northwest Medical continued to operate as a business entity for several years after the certificate of dissolution was issued. All businesses operating in Alaska are responsible for knowing and complying with corporate income tax laws. Thus, the Department of Revenue was a known creditor at the time Northwest Medical conducted business in the state.

## C. The Superior Court Did Not Abuse Its Discretion in Entertaining the Second Appeal.

OTA distributed its final decision on August 6, 2003. The state appealed the decision to the superior court on October 31, 2003, eighty-six days later. Northwest Medical argued before the superior court that the state's appeal was untimely and should be dismissed. The superior court concluded that, although the state failed to appeal within thirty days of the date of service of OTA's final decision, Appellate Rule 521 allowed the superior court to relax the filing deadline.

Under the statutory provisions governing revenue and taxation, an appeal must be filed within thirty days after the decision becomes final.[41] While most administrative decisions by OTA become final sixty days after they are served,[42] an OTA "decision upon reconsideration" becomes final at the time it is served.[43] In its opinion in this case, OTA advised the parties that the decision was a final administrative decision under the statutory provision that authorizes OTA to issue orders on reconsideration[44]—thus avoiding the sixty-day delay before the order would become final—but it did not explain why it believed that provision to be applicable. It may have reached that conclusion because the case was on remand from the superior court and the remand order required OTA to "reconsider" part of its earlier decision. But it is debatable whether "reconsideration" in this context encompasses a remand from the superior court to the OTA.

The state argues that OTA's decision was not an order upon reconsideration because

[n]o party requested reconsideration under AS 43.05.465(b). Thus, the OTA did not have the opportunity to order reconsideration under AS 43.05.465(c). Accordingly,

---

**36.** *Id.*

**37.** *Id.* at 450.

**38.** *Id.* at 452 (quoting *Inducon Corp. v. Crowley Maritime Corp.,* 53 Wash.App. 872, 771 P.2d 356, 358 (1989)).

**39.** *Id.* at 452.

**40.** *Id.*

**41.** AS 43.05.480(a).

**42.** AS 43.05.465(f)(1).

**43.** AS 43.05.465(f)(2).

**44.** *See* AS 43.05.465(e).

the OTA decision became final under AS 43.05.465(f)(1), 60 days after the date the decision was served. That meant the OTA decision became final on October 5, 2003. Under AS 43.05.480(a) the appeal deadline was therefore November 4, 2003. The Department filed its appeal on October 31, 2003.

Thus, the state's contention is that OTA erred in its characterization of its own decision and that the decision would not become final until sixty days after the date it was served. Under the state's view, its appeal was timely.

■ We need not resolve whether OTA's decision was a "decision upon reconsideration" under subsection .065(e) because Appellate Rule 521 authorizes a court to relax the rules "where a strict adherence to them will work surprise or injustice."[45] Here, the fact that OTA viewed its decision as a decision on reconsideration—which would properly be governed by the thirty-day filing requirement—was understandably lost on the state. The decision merely asserted the point with no analysis as to how it actually qualified as a decision on reconsideration. Since this issue is genuinely debatable, it is hardly surprising that the state failed to recognize OTA's view that this was a decision on reconsideration. But even if the decision was a decision on reconsideration and the shorter time period applied, the superior court found that Northwest Medical had not sufficiently supported its allegation that it would be prejudiced if the appeal were accepted. Further, the state demonstrated that it would suffer prejudice if the appeal were dismissed because it would be denied the substantive opportunity for review. Under these circumstances, it was not an abuse of discretion for the superior court to entertain the appeal.[46]

## V. CONCLUSION

Because the Office of Tax Appeals and Alaska courts have subject matter jurisdiction to determine whether an active but dissolved corporation may be taxed, we reject Northwest Medical's jurisdictional challenge.

Because the superior court did not abuse its discretion in accepting the department's appeal and because the corporation, although administratively dissolved by the State of Washington, did not cease to exist as a corporate entity for purposes of taxation by Alaska, we AFFIRM the superior court's decision requiring Northwest Medical to pay the assessed taxes plus interest and penalties.

---

**45.** *See Owsichek v. State, Guide Licensing & Control Bd.,* 627 P.2d 616, 621 (Alaska 1981).

**46.** *See, e.g., Worthy v. State,* 999 P.2d 771, 777 (Alaska 2000); *Mackie v. Chizmar,* 965 P.2d 1202, 1207 n. 4 (Alaska1998).