*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FAIRBANKS NORTH STAR BOROUGH, | ) ) | Supreme Court No. S-17982 |
| | ) | |
| Appellant, | ) | Superior Court No. 4FA-19-01432 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| VICTORY MINISTRIES OF ALASKA, INC. and CAMP LI-WA INC., | ) ) ) | No. 7613 – August 12, 2022 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Ehren D. Lohse, Assistant Borough Attorney, and Jill S. Dolan, Borough Attorney, Fairbanks, for Appellant. F. Steven Mahoney and Janella Kamai, Manley & Brautigam P.C., Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

The Fairbanks North Star Borough partially revoked a local ministry's charitable property tax exemption after learning that the ministry was renting lodging to

the general public. The ministry appealed the Borough's decision to the superior court. The court remanded the issue to the Borough's assessor for more detailed findings, instructed the ministry that any appeal following remand should be made to the Board of Equalization rather than superior court, and closed the case. The assessor issued new findings justifying the partial revocation of the tax exemption, and the ministry appealed to both the Board and the superior court (in a different case). The ministry also filed a motion in the first appeal asking the superior court to enforce its order instructing that appeals be made to the Board.

The superior court issued a sua sponte order granting the ministry's first appeal on the merits, finding "that the assessor [did not] rely on sufficient evidence to revoke [the ministry's] tax exempt status." The Borough appeals. We conclude that following remand, supplemental Board findings, and a new appeal from those findings, the superior court lacked the subject matter jurisdiction to decide the ministry's first appeal on the merits. We therefore vacate its decision granting Victory's appeal.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Victory Ministries of Alaska, Inc. is a 501(c)(3) nonprofit organization founded in 1992. It has two campuses, one of which is Camp Li-Wa near Fairbanks. Victory describes the camp as "currently one of the finest retreat locations in the Interior of Alaska," where "[b]usiness, community, military and religious groups hold retreats and conferences in [a] serene setting nearly every week out of the year." The camp has more than 35 structures, including residential duplexes, lodges, an equestrian center, stables, a dining and conference center, heated dry cabins, an office, a maintenance shop, and summer cabins. Victory is largely supported by contributions and donations from benefactors and since 1985 has received a property tax exemption based on charitable

use.[1]

In 2018 the Fairbanks North Star Borough learned that Victory had been leasing portions of Camp Li-Wa to the public through commercial websites. In May 2018 the Borough sent Victory a letter stating its intent to investigate whether Victory remained eligible for a charitable tax exemption. The letter informed Victory that it should submit evidence demonstrating its eligibility within 30 days, and that as part of its investigation the Borough would require "an onsite review of the property as well as an inventory of all buildings/improvements, what each is used for, and whether each is owned by anyone other than the entity within 30 days."

The Borough performed its on-site inspection of Camp Li-Wa in September 2018. Borough staff noted that two buildings were rented year-round, two were currently occupied, and one was being rented by a group of hunters. Online research confirmed that Victory was marketing various buildings on the property to the general public as "vacation rentals." In October, having received no evidence from Victory, the Borough's deputy assessor again requested a "description and use of each building on the property" as well as "the name and/or function of the occupants for each of the residential properties on site." After another week with no response, the deputy assessor forwarded his request to another Victory representative; the request again went unanswered.

In December 2018, having still received no information from Victory, the Borough assessor revoked the charitable tax exemption for a portion of Victory's property.

---

[1] A state statute, AS 29.45.030(a)(3), defines types of property that are "exempt from general taxation" to include property "used exclusively for nonprofit religious, charitable, cemetery, hospital, or educational purposes."

**B.     Proceedings**

Victory appealed the exemption revocation to the superior court, arguing that its entire property was exempt from taxation. The parties thoroughly briefed their positions. In December 2019 the court issued a decision. It ruled that the Board of Equalization, not the superior court, was the appropriate forum to resolve the appeal and dismissed the case without prejudice.

The Borough moved for reconsideration, arguing that it had discretion to interpret its own code provision, Fairbanks North Star Borough Code (FNSBC) 08.16.040, as requiring that the assessor's exemption determinations be appealed directly to the superior court.[2] In a January 2020 order the court ruled "that instead of dismissing the appeal this court more appropriately should have remanded for findings." It ordered:

1.     The matter is remanded to [the] assessor. Victory Ministries is required and directed to appeal the matter to the Board of Equalization if they seek relief from the assessor's decisions. The time for any such appeal commences from the distribution date of this order.

2.     The court does not retain jurisdiction over this matter and this action is now closed.

3.     Either party may pursue appellate review of [the Board's] findings in the normal course of business.

A few months later Victory and the Borough entered into a settlement agreement "[t]o alleviate further confusion and mitigate costs in further understanding of the" court's reconsideration order. The Borough agreed (1) not to appeal the

---

²     FNSBC 08.16.040 (2015) provides: "A taxpayer who claims that property is not taxable under law may appeal a determination of the Assessor that property is taxable directly to the superior court as provided by rules of court applicable to appeals from the decisions of administrative agencies, or the taxpayer may first appeal to the Board of Equalization as provided by law."

-4-                                    7613

reconsideration order; (2) to accept additional evidence from Victory, including documents it had earlier objected to as untimely; and (3) to "issue detailed findings of fact and conclusions of law regarding Victory's entitlement to a real property tax exemption." The parties agreed "that they remain free to litigate the appropriate venue (Board of Equalization or Superior Court) for any appeal from the Borough Assessor's decision."

In August 2020 the Borough assessor sent Victory a set of much more detailed findings of fact and conclusions of law to support the December 2018 decision partially revoking the exemption. The findings and conclusions included a notice to Victory that it had "the right to appeal the Assessor's determination regarding tax-exempt status to the Superior Court within 30 days." Victory filed appeals with both the superior court and the Board; the Borough rejected the Board appeal as contrary to its interpretation of the Borough Code.[3] The superior court appeal was given a new case number but was assigned to the same judge who had heard the first appeal. Around the same time, Victory filed a motion under the first appeal's case number asking the court to enforce its December 2019 order instructing Victory to appeal to the Board rather than the superior court.

The court did not rule on Victory's motion to enforce but rather, in December 2020, issued an order granting Victory's first appeal on the merits. The order provides:

> The court sua sponte reconsidered its remand order

---

[3]     The Borough cited FNSBC 04.28.050 (2016), which provides in part that "[t]he board shall not hear appeals that do not relate to assessed valuation unless specifically required to do so by law," and AS 29.45.200(c), which provides in part that "a determination of the assessor as to whether property is taxable under law may be appealed directly to the superior court."

and, after reviewing the record,[4] cannot find that the assessor relied on sufficient evidence to revoke Victory's tax exempt status. The record does not establish that the for-profit use of the facilities at Camp Li-Wa were more than *de minimus*.

Accordingly, the court GRANTS Victory Ministries' 2019 appeal of the FNSB revocation of religious tax exemption, *nunc pro tunc*.

The Borough appeals.

## III. STANDARD OF REVIEW

"We review questions of law, including questions of subject matter jurisdiction, de novo."[5] Under the de novo standard of review, "we will 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[6]

## IV. DISCUSSION

**The Superior Court Did Not Have Subject Matter Jurisdiction To Decide Victory's First Appeal Following Remand, A New Administrative Decision, And A Second Appeal From The New Decision.**

"Subject matter jurisdiction is 'the legal authority of a court to hear and decide a particular type of case.' "[7] "The doctrine of subject matter jurisdiction applies

---

[4]     The parties disagree about whether the superior court had the Borough assessor's new findings before it when it made its decision. Our review of the record does not persuade us that the court had the new findings; they had been filed with the second appeal but are not found in the case file of the first appeal, ostensibly the one in which the superior court issued its order on the merits.

[5]     *Hawkins v. Attatayuk,* 322 P.3d 891, 894 (Alaska 2014).

[6]     *Se. Alaska Conservation Council, Inc. v. State, Dep't of Nat. Res.*, 470 P.3d 129, 136 (Alaska 2020) (quoting *State, Div. of Elections v. Green Party of Alaska*, 118 P.3d 1054, 1059 (Alaska 2005)).

[7]     *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006) (quoting ERWIN CHEMERINSKY, FEDERAL JURISDICTION 257 (3d ed.

to judicial and quasi-judicial bodies to ensure that they do not overreach their adjudicative powers."[8]  "As a court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived, and can be raised at any point during the litigation."[9]

The superior court by statute has jurisdiction over administrative appeals involving the question whether property qualifies for a charitable tax exemption.[10]  But having acquired that jurisdiction, the court does not retain it in perpetuity; unless an order provides otherwise, jurisdiction over a case transfers back to the lower court or tribunal after the appellate court enters its judgment.[11]  The superior court in this case decided Victory's 2019 appeal in January 2020 by (1) remanding the matter to the assessor for further findings of fact, (2) directing that any new appeal should be made to the Board rather than the court, and (3) concluding that "[t]he court does not retain jurisdiction over this matter and this action is now closed."  As directed, the assessor made further findings, and Victory filed an appeal from these more robust findings with both the Board and the superior court.  That superior court appeal has not yet been decided; instead, the court purported to decide the closed 2019 appeal on its merits sua sponte.

---

[7]  (...continued)
1999)).

[8]  *Id.*

[9]  *Wanamaker v. Scott*, 788 P.2d 712, 713 n.2 (Alaska 1990).

[10]  *See* AS 29.45.200(c).

[11]  Alaska R. App. P. 507(b).  When the superior court reviews an agency decision it "sits as an intermediate court of appeal and applies the Alaska Rules of Appellate Procedure." *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 993 P.2d 1018, 1021 (Alaska 1999).

The question before us is whether the superior court had the subject matter jurisdiction to decide an appeal in a closed case when another appeal from supplemental findings and conclusions was pending and had yet to be briefed and argued. Stating the question suggests its answer: the superior court lacked the necessary jurisdiction.

Victory relies on Alaska Rule of Appellate Procedure 520(c) for the proposition that "[a]fter reacquiring subject matter jurisdiction, the superior court could review the entire matter and issue any appropriate relief." Rule 520(c) provides that a court may "direct the entry of such appropriate judgment . . . as may be just under the circumstances" when a "decision or order of a court [is] lawfully brought before it for review." Victory argues that the 2019 appeal was "lawfully brought before [the court] for review," restoring the court's jurisdiction over it, when Victory filed its motion to enforce the 2019 appeal's closing order. And the Borough does not dispute a superior court's continuing authority to enforce its own orders.[12]

But we reject the argument that Victory's motion to enforce the 2019 appeal's closing order brought the merits of the closed and superceded case back to the superior court for sua sponte decision. Appellate courts do sometimes "recall the mandate" to reconsider an appellate decision, but "because of the profound interests in repose that attach to the mandate of a reviewing court, the power to recall a mandate is

---

**12** *See State, Dep't of Revenue v. Amoco Prod. Co.*, 676 P.2d 595, 596-97, 602 (Alaska 1984) (stating that superior court had jurisdiction over motion to enforce court's remand instructions to Audit Division of the Department of Taxation); *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) ("District courts have the authority to enforce the terms of their mandates . . . . The exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency.").

one that can be exercised only in extraordinary circumstances."[13] "[T]he rule most generally adhered to is that an appellate court is without power to recall a mandate regularly issued without mistake, inadvertence, fraud, prematurity, or misapprehension, and that it will not recall the mandate for the purpose of reexamining the cause on the merits, or to correct judicial error."[14]

The court's lack of jurisdiction over the closed appeal was not cured by its use of the term "*nunc pro tunc*." The term — literally translated as "now for then" — "is used by courts to indicate that an order or document is being given retroactive effect. Courts may appropriately use this power to correct mistakes" such as clerical errors.[15] "But . . . the entry *nunc pro tunc* . . . cannot be used by the lower court as a device to amend a judgment which properly reflected the decision of the court, but which was later found to be undesirable or erroneous."[16]

Even if the court in this case had the jurisdiction to consider the merits of the closed appeal, the way it went about it was problematic. A superior court appeal

---

[13]     5 C.J.S. *Appeal and Error* § 1195 (2022).

[14]     *Id*.; *see also Sw. Inv. Corp. v. City of Los Angeles*, 241 P.2d 985, 988 (Cal. 1952) ("[A]n appellate court has no appellate jurisdiction of its own judgment; and it has no power to recall the remittitur for the purpose of reconsidering or modifying its judgment on the merits."); *Kosten v. Fleming*, 136 P.2d 449, 451 (Wash. 1943) (explaining that once supreme court's judgment has "been transmitted to the superior court, this court has lost jurisdiction of a case, and cannot recall the [judgment], except in certain instances").

[15]     *Peterson v. Swarthout*, 214 P.3d 332, 336 n.2 (Alaska 2009) (citing *nunc pro tunc*, BLACK'S LAW DICTIONARY (8th ed. 2004)).

[16]     *Isaacson Structural Steel Co., Div. of Isaacson Corp. v. Armco Steel Corp.*, 640 P.2d 812, 817 n.11 (Alaska 1982) (second alteration in original) (quoting 6A J. Moore, MOORE'S FEDERAL PRACTICE ¶ 58, at 303-04 (1979)).

from an administrative decision follows an orderly procedural path governed by the appellate rules and designed to ensure that the parties have the opportunity to brief and argue their positions and the court has the benefit of a complete record.[17] These requirements implicate "the core of due process."[18] Here, the superior court decided the closed case on the merits apparently without considering the more detailed administrative decision then on appeal under a different case number[19] and without giving the parties the opportunity to brief their positions as to that new administrative decision. The Borough was entitled to the opportunity to explain why the August 2020 findings and conclusions justified its earlier decision to partially revoke Victory's tax exemption.

## V.    CONCLUSION

The superior court order granting Victory's appeal on the merits is VACATED. Any questions concerning whether Victory may appeal the assessor's determination to the Board of Equalization rather than to the superior court shall be resolved in Victory's second appeal to the superior court (4FA-20-02190 CI).

---

[17]    *See* Alaska R. App. P. 604(b) (governing record on appeal in appeals from administrative agencies); Alaska R. App. P. 605 (governing form and content of briefs); Alaska R. App. P. 605.5(b) (providing right to oral argument).

[18]    *Rowland v. Monsen*, 135 P.3d 1036, 1039 (Alaska 2006) ("An order is void if the court that entered the order 'acted in a manner inconsistent with due process of law.' At the core of due process is an 'opportunity to be heard and the right to adequately represent one's interests.' " (first quoting *State, Dep't of Revenue, Child Support Enf't Div. v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000); and then quoting *State, Dep't of Nat. Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1063-64 (Alaska 2004))).

[19]    As noted above at note 4, the parties dispute whether the superior court had the assessor's August 2020 findings and conclusions before it when it granted Victory's first appeal, from the December 2018 decision, *nunc pro tunc*.