*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HAROLD HAWKINS, | ) | |
| | ) | Supreme Court No. S-14812 |
| Appellant, | ) | |
| | ) | Superior Court No. 2NO-11-00148 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROSALIND ATTATAYUK, | ) | |
| | ) | No. 6888 – April 11, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Ben Esch, Judge.

Appearances: Samuel J. Fortier, Fortier & Mikko, P.C., Anchorage, for Appellant. Sarah M. Carver, Bethel, and James J. Davis, Jr., Anchorage, Alaska Legal Services Corp., for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

Harold Hawkins and Rosalind Attatayuk married and lived together in St. Michael until 1981, when they dissolved their marriage. Hawkins was awarded the couple's home in the dissolution and continued to reside on the property, which was federally owned. In 1993 Attatayuk applied for and received a restricted townsite deed to the land by allegedly fraudulent means. She brought a trespass action against

Hawkins, alleging that she had undisputed title to the land. Hawkins denied this allegation. The superior court ruled on summary judgment that Attatayuk's restricted townsite deed gave her title to the land. Because Alaska state courts do not have subject matter jurisdiction to adjudicate title or right to possession of restricted townsite property, the only issue presented in this appeal is whether the superior court adjudicated title to the land in question. We hold that the superior court did adjudicate title and, as a result, exceeded its jurisdiction.

## II.   FACTS AND PROCEEDINGS

In 1926, Congress enacted the Alaska Native Townsite Act, extending the provisions of the federal townsite laws to Alaska Natives.[1] Under the Townsite Act, Native townsite residents could receive a restricted deed that was inalienable absent federal approval.[2] The Townsite Act was repealed in 1976, but a savings provision protected all land use rights existing at that time.[3] Federal regulations allowed qualifying Native residents to apply for a restricted townsite deed after the Townsite Act was repealed.[4]

### A.   Facts

Harold Hawkins and Rosalind Attatayuk married in 1972 and lived in St. Michael in a house they owned located on federal land. In 1981 Attatayuk moved to

---

[1]    Former 43 U.S.C. §§ 733-36, 44 Stat. 629 (1926); *United States v. Atl. Richfield Co.*, 435 F. Supp. 1009, 1015 (D. Alaska 1977), *aff'd* 612 F.2d 1132 (9th Cir. 1980).

[2]    44 Stat. 629; 43 C.F.R. § 2564.4 (2014).

[3]    Federal Land Policy and Management Act, P.L. No. 94-579, 90 Stat. 2743 (1976); *People of S. Naknek v. Bristol Bay Bor.*, 466 F. Supp. 870, 872 n.3 (D. Alaska 1979).

[4]    43 C.F.R. § 2564.1 (2014).

Nome, but the couple did not dissolve their marriage until 1988. In their petition for dissolution, the only asset that the couple listed as real property was: "house 20 x 30 two story in St. Michael." Hawkins and Attatayuk stated that they jointly owned the house and sought to have the court award it to Hawkins, which the court did. Hawkins continued to live in the house after the dissolution. He opened a restaurant on the property and slowly made improvements over the years.

In December 1993 Attatayuk applied for a restricted townsite deed to the property. She signed her name certifying that "there is no one living on, or claiming an interest in, this tract other than myself," despite the fact that she knew there was a house on the property and that the house had been awarded to Hawkins in their dissolution decree. She stated that the only improvement on the property was a steam bath. The federal government granted Attatayuk the restricted townsite deed in March 1994. It is unclear when Hawkins learned that Attatayuk had applied for and received the deed, but it appears that he discovered this fact no later than 2010 or 2011.

**B.    Proceedings**

In August 2010 Hawkins invited his and Attatayuk's daughter, Marcella, and her family to live in his house and work at the restaurant. But in May 2011 Hawkins, acting pro se, filed a complaint to evict Marcella and her family, alleging that she had broken numerous pieces of his personal property and had damaged the house itself. Immediately afterwards, on May 18, 2011, Attatayuk filed an action against Hawkins for trespass in order to allow her daughter to remain on the property. In her complaint Attatayuk alleged, "There is no dispute that the land . . . belongs to Ms. Attatayuk." Later in the complaint she asserted that "[d]efendant does not dispute plaintiff's title to the land."

Two days later, on May 20, 2011, the court held a hearing on both

Attatayuk's trespass complaint and Hawkins's eviction action against Marcella.[5] At the hearing Hawkins explained that the dissolution decree gave him a right to have his house on the property. He also stated that Attatayuk's deed was void because she was not living on the property when she applied for the deed, and she had not notified the occupant of the land, Hawkins, that she was applying for the deed. The court then asked, "[A]re you suggesting, Mr. Hawkins, that you believe the issue of ownership of that land is in question?" Hawkins replied, "I do, your honor."

On June 29, 2011, Hawkins, proceeding pro se, filed a written answer to Attatayuk's complaint. Although he did not affirmatively plead fraud, he "denied" her assertions that "[t]here is no dispute that the land . . . belongs to Ms. Attatayuk," and that "[d]efendant does not dispute plaintiff's title to the land." He also "denied" her allegations that "[d]efendant has no right to be on the land," and that his house was "sitting on Attatayuk's Native land."

On November 16, 2011, Attatayuk moved for partial summary judgment. She argued that "there are no facts in dispute in this case: Ms. Attatayuk has legal title to the at-issue land." Hawkins did not file a response to the motion for partial summary judgment. The court granted the motion, finding that "[Attatayuk] has title to the subject property," and "[Hawkins] has no right to place property on the land." The court also granted a motion in limine prohibiting Hawkins from arguing "fraud by Ms. Attatayuk in obtaining the restricted deed" at trial.

In March 2012 Hawkins hired an attorney and filed a motion to dismiss the case for lack of subject matter jurisdiction. He argued that the superior court "lack[ed] subject matter jurisdiction to determine issues of ownership, trespass or property rights

---

[5]     The court explained that it held the hearing on Attatayuk's action for trespass two days after filing "because the parties basically were going to be here anyway."

under state law, because federal law controls the field entirely." Attatayuk responded that "here, title to Ms. Attatayuk's [restricted townsite deed] is *not* at issue." The superior court denied the motion.

The superior court held a jury trial on the issue of damages. The jury found that Attatayuk was entitled to $123.12 per month for the use of her land for 18 months and awarded her $2,216.16 in total damages. Attatayuk moved for $443 in attorney's fees and for final judgment. Hawkins countered by arguing, again, that the superior court lacked jurisdiction over the case. The superior court entered final judgment for Attatayuk on May 31, 2012. Hawkins appeals.

## III.  STANDARD OF REVIEW

We review questions of law, including questions of subject matter jurisdiction, de novo.[6]

## IV.  DISCUSSION

Hawkins's central argument is that the superior court lacked subject matter jurisdiction. In the alternative, he contends that: (1) the grant of summary judgment was erroneous because there were still issues of material fact, and the court failed to inform him of the "proper procedures"; (2) the court's order prohibiting Hawkins from arguing fraud in Attatayuk's deed at trial was erroneous; (3) some of the jury instructions were erroneous; and (4) the superior court denied Hawkins procedural and substantive due process. Because we hold that the superior court did not have subject matter jurisdiction, we do not reach his other arguments.

---

[6]     *Foster v. State, Dep't of Transp*., 34 P.3d 1288, 1290 (Alaska 2001) (questions of subject matter jurisdiction reviewed de novo); *DeVaney v. State, Dep't of Revenue, Child Support Enforcement Div. ex. rel. DeVaney*, 928 P.2d 1198, 1200 (Alaska 1996) (questions of law reviewed de novo) (citing *Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990)).

**A.    The Superior Court Did Not Have Subject Matter Jurisdiction To Adjudicate The Ownership Or Right To Possession Of A Restricted Townsite Lot.**

"The doctrine of subject matter jurisdiction applies to judicial and quasi-judicial bodies to ensure that they do not overreach their adjudicative powers."[7] Subject matter jurisdiction is "the legal authority of a court to hear and decide a particular type of case."[8] Consequently, subject matter jurisdiction is a threshold determination and prerequisite for a court to hear a case.[9] "As a court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived."[10] The issue of subject matter jurisdiction "may be raised at any stage of the litigation and if noticed must be raised by the court if not raised by one of the parties."[11]

Hawkins is correct that the superior court lacked subject matter jurisdiction to adjudicate title to the property in question. State courts do not have subject matter jurisdiction to adjudicate the title or right to possession of restricted townsite lots. In 1953 Congress enacted Public Law 280, codified in part as 28 U.S.C. § 1360, which

---

[7]    *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006).

[8]    *Id.* (citing Erwin Chemerinsky, Federal Jurisdiction 257 (3rd ed. 1999)).

[9]    *See id.* ("Subject matter jurisdiction is a prerequisite to a court's ability to decide a case."); *Gilbert v. Gladden*, 432 A.2d 1351, 1353-54 (N.J. 1981) (holding that . . . subject matter jurisdiction involves "a threshold determination as to whether the court is legally authorized to decide the question presented").

[10]    *Robertson v. Riplett*, 194 P.3d 382, 386 (Alaska 2008) (quoting *Wanamaker v. Scott*, 788 P.2d 712, 714 n.2 (Alaska 1990)).

[11]    *Hydaburg Co-op. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996) (quoting *Burrell v. Burrell*, 696 P.2d 157, 162 (Alaska 1984)).

granted states, including Alaska,[12] limited civil jurisdiction over cases arising in "Indian country."[13] But the law does not "confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of [trust or restricted] property or any interest therein."[14] Because the United States Congress has not granted jurisdiction, Alaska state courts do not have subject matter jurisdiction to adjudicate any dispute regarding the ownership of Alaska Native townsite property.[15]

Attatayuk's claim to the land rests on a restricted townsite deed, which makes the land "subject to a restriction against alienation imposed by the United States."[16] Both parties agree that the superior court did not have jurisdiction to adjudicate title to the land in question. This is consistent with our precedent. In *Ollestead v. Native Village of Tyonek*, we held that "[s]ubsection 1360(b) precludes state courts from adjudicating the ownership or right to possession of property or an interest therein belonging to an Indian tribe or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States."[17] Nonetheless, Attatayuk argues that the superior court had subject matter jurisdiction

---

[12]     Alaska was added to the bill by an amendment in 1958. Pub. L. No. 85-615, § 2, 72 Stat. 545 (1958).

[13]     28 U.S.C. § 1360(a) (2012).

[14]     *Heffle v. State*, 633 P.2d 264, 267 (Alaska 1981) (quoting 28 U.S.C. § 1360(b) (1976)).

[15]     COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 551-53 (Nell Jessup Newton ed., 2012).

[16]     *Heffle*, 633 P.2d at 267.

[17]     560 P.2d 31, 34 (Alaska 1977).

because either Hawkins did not contest ownership of the land, or his claim to the land was a "sham" claim.

**B. Hawkins Contested The Validity Of Attatayuk's Restricted Townsite Deed.**

Hawkins clearly contested the title and right to possession of the property. On May 20, 2011, two days after Attatayuk filed her complaint against Hawkins for injunctive relief and damages for trespass, the court held a hearing on both Attatayuk's trespass complaint and the eviction complaint Hawkins had filed against their daughter. At the hearing Hawkins argued that the dissolution decree gave him a right to have his house on the property. He also contended that Attatayuk's restricted townsite deed was void because she had not notified the occupant of the land that she was applying for the deed and because she was not living on the land at the time. The court then asked, "[A]re you suggesting, Mr. Hawkins, that you believe the issue of ownership of that land is in question?" Hawkins replied, "I do, your honor." He then alleged that Attatayuk had committed fraud by not disclosing when she applied for a deed that Hawkins lived on the land and that he had received the house in the divorce. When he filed his formal answer, he denied Attatayuk's assertion that "[t]here is no dispute that the land . . . belongs to Ms. Attatayuk." He also denied the remainder of her allegations that the title was not in dispute.

Not only did Hawkins clearly contest the ownership of the property, the superior court plainly adjudicated the issue by awarding partial summary judgment on the question of title. The court, in granting Attatayuk's motion for partial summary judgment, determined that "[Attatayuk] has title to the subject property," and "[Hawkins] has no right to place property on the land." The court's conclusion that "[Attatayuk] has title to the subject property" was undisputably an adjudication of an ownership interest in restricted townsite property. But under 28 U.S.C. § 1360(b) the superior court may

not adjudicate "the ownership or right to possession of such [trust] property or any interest therein."

Attatayuk also argues that Hawkins was required to either assert his fraud claim in his answer to Attatayuk's complaint or amend his answer to do so after retaining counsel. The Alaska Rules of Civil Procedure provide that affirmative defenses such as fraud are to be included in the answer,[18] but Hawkins was pro se when he filed his answer and likely unaware of this procedural requirement. We have held that the superior court "should generally hold the pleadings of pro se litigants to less stringent standards than those of lawyers."[19] This leniency is especially appropriate "when lack of familiarity with the rules rather than gross neglect or lack of good faith underlies litigants' errors."[20] And when Hawkins retained counsel, counsel entered a limited appearance solely to contest the court's jurisdiction.

Here, both Attatayuk and the superior court were aware that Hawkins's defense against Attatayuk's trespass action rested on his challenge to Attatayuk's ownership of the land; Hawkins had made this very clear at the first hearing. When Hawkins realized he still needed to file a written answer despite asserting his defenses at the hearing, he made a good faith effort to do so. He clearly denied that Attatayuk had title to the property, even if he did not clearly assert as an affirmative defense that his reason was fraud. Moreover, Hawkins later retained counsel for the limited purpose of contesting subject matter jurisdiction, and his motion to dismiss clearly put at issue his

---

[18]    Alaska R. Civ. P. 8(b).

[19]    *Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003).

[20]    *Id.* (quoting *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002)) (internal quotation marks omitted); *see also DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005) (holding that the court has "a policy against finding unintended waiver of claims in technically defective pleadings filed by pro se litigants").

challenge to Attatayuk's restricted townsite deed. Finally, there can be no serious dispute that Hawkins alleged Attatayuk obtained her restricted townsite deed by fraud: the superior court granted Attatayuk's motion in limine to preclude Hawkins from putting on evidence or arguing fraud at trial.

### C. Hawkins's Claim Was Not A "Sham" Claim.

Attatayuk argues that title was not in dispute because, as she repeatedly asserted in oral argument, Hawkins's claim was a "sham" claim. She argues that Hawkins was required to introduce evidence that his claim was not a "sham" before the superior court could actually adjudicate title. In her view, Hawkins could not do this because "[a fraud or ownership] claim would have been barred as a matter of law" since "[a] suit to vacate a [federal] patent . . . must be brought within six years of issuance." In essence she argues that the court had subject matter jurisdiction because there was no viable objection to her restricted deed because Hawkins's ability to challenge her restricted townsite deed was barred by the statute of limitations. Thus, she asks this court to look behind the jurisdictional curtain and find that Hawkins has no viable claim by doing precisely what 28 U.S.C. § 1360(b) forbids — adjudicating any possible defense Hawkins might have to her restricted townsite deed, or adjudicating her statute of limitations defense to Hawkins's fraud claim. As we have explained, state courts do not have jurisdiction to adjudicate disputes regarding restricted title, and this includes passing judgment on the viability of an underlying claim of restricted title or a defense to that claim. Attatayuk asks us to examine the merits of Hawkins's defenses to her restricted townsite deed in order to find that the superior court had jurisdiction. Such an argument is untenable. If the superior court lacked subject matter jurisdiction to adjudicate title to the restricted townsite deed, it lacked jurisdiction to adjudicate any aspect of the deed's validity.

## V. CONCLUSION

We conclude that the superior court adjudicated title to restricted township land and thereby acted without subject matter jurisdiction. We REVERSE and REMAND with directions to the superior court to DISMISS the case.[21]

---

[21] In light of this disposition, the award of attorney's fees in favor of Attatayuk must be vacated. Hawkins is the prevailing party and is entitled to an award of attorney's fees in the superior court. *See Foster v. State, Dep't of Transp.*, 34 P.3d 1288, 1291 (Alaska 2001) ("[W]e hold that the court could award . . . costs and attorney's fees under Civil Rules 79 and 82, even after it concluded that it lacked jurisdiction over [the] claims.").