*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMANDA M. PEIDLOW, n/k/a MARLANA REXFORD, | ) ) ) | Supreme Court Nos. S-16804/16893 (Consolidated) |
| Appellant, | ) ) | |
| v. | ) ) | Superior Court No. 2BA-13-00179 CI |
| PETER T. WILLIAMS, VERA A. WILLIAMS, and WASKA A. WILLIAMS JR., | ) ) ) ) | O P I N I O N |
| Appellees. | ) ) | No. 7431 – March 20, 2020 |
| | ) ) | |
| NATIVE VILLAGE OF BARROW, | ) ) | |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| PETER T. WILLIAMS; AMANDA M. WILLIAMS, n/k/a MARLANA REXFORD; VERA A. WILLIAMS; and WASKA A. WILLIAMS JR., | ) ) ) ) ) | |
| Appellees. | ) ) | |

Appeals from the Superior Court of the State of Alaska, Second Judicial District, Utqiagvik, Angela Greene, Judge.

Appearances: Matthew Singer, Jessica M. Brown, and Peter Scully, Holland & Knight LLP, Anchorage, for Appellants. Ethel A. Patkotak, Patkotak Law Office, P.C., Kasilof, for

Appellee Peter T. Williams. Christopher M. Brecht and Suzanne A. Adler, Bankston Gronning O'Hara, P.C., Anchorage, for Appellees Vera Williams and Waska Williams Jr.

Before: Bolger, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carney, Justice, not participating.]

BOLGER, Chief Justice.
STOWERS, Justice, dissenting.

## I.    INTRODUCTION

These consolidated appeals arise from concurrent custody proceedings involving the same child before the courts of two independent sovereigns — the State of Alaska and the Native Village of Barrow (NVB). A child custody case was initiated in the Utqiagvik superior court. Thereafter, NVB, through its tribal court, took custody of the child in a tribal child in need of aid (CINA) case.

In 2016 the superior court ultimately denied the mother's state court motion to modify custody. NVB sought to intervene in the state custody case, but the superior court denied its motion. The mother appeals from the superior court's denial of her motion to modify custody; NVB appeals from the order denying its motion to intervene.

The Indian Child Welfare Act (ICWA) requires a superior court receiving a tribal court order to determine whether the order was issued in an ICWA-defined child custody proceeding and, if it was, to follow ICWA § 1911(d)'s full faith and credit mandate. Therefore, we conclude that the superior court erred in ruling that the NVB tribal court lacked jurisdiction without following the procedures underlying the process for giving full faith and credit to a tribal court order.

## II.    FACTS AND PROCEEDINGS

A.W. was born in 2004 to Amanda Peidlow and Peter Williams, and is an enrolled member of NVB.[1]  For the first five years of A.W.'s life, she lived with Amanda and Peter with Peter's parents – Vera and Waska Williams — in Utqiagvik (formerly known as Barrow).  Peter and Amanda were never married:  Their romantic relationship ended in 2010, at which point the family stopped living together.  Vera and Waska have housed and cared for A.W. intermittently throughout her life.  A.W. lived with Vera and Waska during part of 2010 and 2011, and then resided with Amanda from 2011 until September 2015.

### A.    Dueling Custody Proceedings

In 2013 Peter filed a complaint in the Utqiagvik superior court for shared custody of A.W.  In Amanda's answer, she requested sole legal custody and primary physical custody.  In 2014 Vera and Waska petitioned for grandparent visitation and moved to intervene in the custody case.  The superior court granted the grandparents' motion to intervene, but disallowed grandparent visitation, except at Amanda's discretion.  In March 2015 the court ordered interim legal and physical custody in favor of Amanda.  The court also ordered a custody investigator to conduct a full investigation.

In September 2015 Amanda allegedly committed fourth degree assault against A.W. by hitting her in the face.  Peter was away subsistence hunting when the alleged assault occurred.  NVB social services responded, and the tribe took emergency custody of A.W., placing her with her maternal grandmother.  Peter signed a care and safety plan from NVB social services.

On September 22 Peter filed a motion in the superior court requesting a hearing to determine "the extent of domestic violence perpetrated in the custodial

---

[1]    The daughter's initials are used to protect her privacy.

household" and for the court to issue "appropriate amended interim [custody] orders." On October 7 the superior court ruled that Peter would have interim physical custody of A.W.

In early October the tribal court extended NVB's custody over A.W. for one year and ordered that both parents must finish case plans written by NVB social services and approved by the tribal court. The tribe placed A.W. with Peter in Vera and Waska's home.

The superior court formally addressed the issue of the tribal court's CINA jurisdiction in a November 2 order, stating in relevant part that the court "was apprised of [NVB] taking [A.W.] under its custody and jurisdiction in the emergency arising after [Amanda] assaulted [A.W.]. This [c]ourt expressed doubt that [A.W.] remains a child in need of aid, since [Peter] has assumed physical custody." The superior court recognized, however, that "as of October 6, 2015, the [NVB] Tribal Court extended its jurisdiction for a year." The court stated that as a matter of law, A.W. could not be subject to the tribal court's and the superior court's jurisdiction on the same legal issues.

The court erroneously stated that NVB had "requested that a copy of the order giving [Peter] full custody be given to the tribal court so that it could release its jurisdiction and close the case." In a footnote to its order, the court recognized that "[NVB] has 25 U.S.C. [§] 1911(a) *exclusive jurisdiction* to care for its children," but the court then reiterated its mistaken understanding that after the order was issued "[NVB] agreed to drop its case so that two independent sovereigns do not each assert custody." (Emphasis added.) The court concluded its order by stating it had written a "one-page summary" order, "distributed [the order] to the [NVB] Tribal Court," and "trust[ed] that the matter ha[d] been resolved."

B.    **The Superior Court Custody Trial**

The superior court held a four-day custody trial in March and April 2016.

At trial the issue of whether the tribal court CINA case was still pending came up several times. For example, the superior court discussed with the parties whether it should release the custody investigator's report to the tribal court but ultimately determined that it would not for confidentiality reasons. During this discussion, counsel for Amanda stated specifically that "there's still an ongoing child case in the tribal court."

Representatives from NVB were present at the hearing, and one spoke briefly with the superior court about the tribal court case. During this discussion, the following exchange occurred between the court and counsel for the parties:

> [Judge Greene]: I do have a bit of a concern though about an open child welfare case. Last time we were here, the issue is that [Peter] and [Amanda] can't follow the orders of two courts at the same time. So if the [NVB tribal court] makes a different rule than this court does, which one is he to follow? That's the question, and that's generally why we don't have . . . dual jurisdiction.
>
> . . . .
>
> [Counsel for Peter]: Your Honor, may I interject? The basis for my objection, and it still remains, and the decision is not — on the release is not mine to make. However, this is a custody case. The [NVB tribal court] action is a CINA action.
>
> [Judge Greene]: Right.
>
> [Counsel for Peter]: Over which the senior judge extended jurisdiction for a solid year.
>
> [Judge Greene]: Right.
>
> [Counsel for Peter]: And announced that they were going to hold onto jurisdiction until the child custody investigator's report was issued in the expectation that as a matter of — as a matter of right, they could demand a copy of the information.
>
> . . . But my point is some of the tribal court's actions

that I'm aware were bleeding into [the] custody actions . . . .

[Judge Greene]: That's what I'm saying. It was my understanding that that case was supposed to be closed. And this [c]ourt had sent over a copy of the award of custody to [Peter]. And then it was this [c]ourt's understanding that that case would be closed because it's the same child and they can't have dual jurisdiction over the same child, because then you got people trying to follow different court's orders.

. . . .

[Counsel for Amanda]: Your Honor, these representatives of the [NVB] aren't really authorized to get into these issues regarding the tribal court. So I don't want to put them into a position where they feel pressured to say or do something when . . . the tribal court made a decision. The courts can speak to each other.

On April 18, 2016, the superior court issued a final custody order awarding sole legal and physical custody of A.W. to Peter and allowing Amanda supervised visitation. In the order, the superior court recognized that "NVB kept [its] case open, asserted custody of [A.W.], and set up visitation and . . . case plans for the parents." In bold print at the end of its order the superior court stated: "The [NVB] has no ability to supersede or modify these conditions, or any other order of this Court, under any circumstances. The parents are not bound by orders issued by the [NVB] *in this case only*." (Emphasis in original.)

## C. Amanda's Motions To Modify The Final Custody Order

In September 2016, five months after the superior court's final custody order, Amanda (self-represented) filed a motion in the superior court to change custody, support, and visitation. She explained that she had completed domestic violence courses, attended Alcoholics Anonymous and Narcotics Anonymous classes to maintain her sobriety, maintained a full-time permanent job, and regained custody of her other

children; she argued that these factors constituted a substantial change in circumstances for the purposes of modifying custody and visitation.

The superior court held a hearing on the modification motion on January 18, 2017, at which only Amanda and her mother were present.[2] Following the hearing the court ordered that Amanda could have unsupervised visitation and that she could file an amended motion further detailing her request for a change in custody. On January 24 Amanda filed an amended motion to change custody. She repeated the reasons included in her first motion and added that she "successfully completed [her] case plan with the [NVB] Social Services Department and was granted custody of [her two] other children." She served her amended motion on counsel for Peter and counsel for Vera and Waska.

Peter and his parents filed oppositions to Amanda's amended motion to change custody. On March 14 Amanda filed a second amended motion — this time asserting a change in circumstances due to A.W. allegedly being subjected to verbal and emotional abuse by Peter's partner Ethel, and due to concerns that Peter and Ethel were abusing drugs and alcohol. Vera and Waska opposed the amended motion, as did Peter.

### D.     The NVB Tribal Court's Orders And The Superior Court's Response

On April 21, 2017, the tribal court filed an order in the superior court custody case. The order included a jurisdictional statement that claimed jurisdiction pursuant to specific sections of NVB's judicial and children's codes. The order listed A.W., Amanda, and Peter as parties, and it contained eight findings followed by four directives. In the order the tribal court commented specifically on the superior court having granted Peter custody of A.W. in October 2015 even though the tribal court had taken physical and legal custody of her in September 2015. The tribal court explained

---

[2]     Superior Court Judge pro tem Michael Jeffery conducted this hearing because Judge Greene was on extended personal leave.

that the tribe would not dismiss its case "until all that has been ordered in previous Tribal Court Orders ha[d] been completed." The tribal court concluded its order by stating that A.W. would be "placed in a six month trial physical custody of the mother" and that "the child [would] remain in the legal custody of the tribe until April 13, 2018."

On June 6 the tribal court filed Alaska Court System form CN-600 titled "Request To Register Tribal Court ICWA Custody Order" with the superior court in a separate case. The tribal court listed its April order on the form as the order it sought to register. On July 24 the superior court issued an order in the registration case,[3] finding the tribal court's notice of registration invalid and unenforceable by the State of Alaska. The superior court explained that the tribal court "did not check one of the boxes [on form CN-600] pertaining to ICWA placements and termination of parental rights." The superior court stated that the tribal court's "order is invalid because . . . NVB does not have any jurisdiction in a custody dispute." The superior court distributed its order to Peter and Amanda.

On July 25 the superior court issued an order in the custody case denying Amanda's motion to modify custody and ruling that the tribal court's April order was not enforceable. The court explained in its order that Amanda had failed to plead a prima facie case that a substantial change of circumstances existed in order to warrant a hearing. The second half of the superior court's order addressed the tribal court's April order. The superior court asserted that the tribal court "has not granted [its] orders . . . full faith and credit, or comity" and that "NVB misled the [c]ourt and the parties as to its intent regarding its [CINA] case." The court stated that "neither the parties nor the [c]ourt had notice of the status of the [CINA] case when the [c]ourt issued

---

[3]        Judge Greene, having returned from leave, issued these and all subsequent orders.

the Final Custody Order" and that "[a]t the conclusion of the custody hearing . . . the NVB representative stated it was withdrawing the [CINA] petition."[4]

The superior court provided the following reasons why the tribal court's order was not enforceable: (1) "ICWA does not apply in a custody case"; (2) "once the custody petition was filed in this case [in 2013], because ICWA's provision for exclusive tribal jurisdiction d[id] not apply, [the superior court] had exclusive jurisdiction regarding [A.W.]'s custody"; (3) the tribal court's order was "riddled with mistakes, [was] misleading, and [lacked] notice as required under Alaska law"; (4) "[A.W.] was subject to the jurisdiction of [the superior court] long before the Tribe opened its child protection case"; and (5) "the Tribe had an opportunity at the custody hearing to make its position clear, and the [superior court] and the parties [were] permitted to rely on its representation that the petition would be withdrawn and the case closed." In conclusion the superior court stated: "The Tribal Court Order of April 21, 2017, purporting to place [A.W.] in the physical custody of her mother and legal custody with the NVB is not enforceable by the State of Alaska."

Following the superior court's order denying Amanda's motion to modify custody, on July 27 the tribal court filed a second order in the superior court custody case. The tribal court's second order was similar to its first but included a more in-depth timeline. The tribal court explained that it would continue to assert exclusive jurisdiction over matters involving tribal children.

The superior court distributed the tribal court's order to Amanda, Peter, and Vera and Waska — accompanied by a notice allowing 15 days for a response from the parties. The last line of the superior court's notice included the following statement in bold: "[NVB]'s Tribal Court Orders are not valid orders because NVB has no

---

[4]     As explained above, the record shows that the representative from NVB social services did *not* state that the tribal court was withdrawing its CINA petition.

jurisdiction in a child custody dispute. The Tribal Court Orders are not enforceable by the State of Alaska." None of the parties responded to the tribal court's second order.

On August 22 the superior court issued an order responding to the tribal court's second order. The superior court asserted that "NVB does not have any jurisdiction over [A.W.]" and that "it cannot issue enforceable orders regarding her custody." The court additionally stated that "NVB is not a party to the case," that the court had "read and considered the arguments" in the tribal court's order as a "courtesy," and that the court "reject[ed] NVB's position that it can issue a custody order that directly and expressly interferes with orders of [the superior court]."

### E. NVB's Motion To Intervene

On August 23 NVB filed a motion in the superior court to intervene, as a matter of right pursuant to Alaska Civil Rule 24(a), and at the superior court's discretion in accordance with Rule 24(b). On August 25 Amanda filed an appeal of the superior court's order denying her motion to modify custody. On October 12 the superior court denied NVB's motion to intervene, concluding that the court did not have jurisdiction to grant NVB's motion because of Amanda's pending appeal. The superior court alternatively concluded that NVB could not intervene as a matter of right because the tribal court did not have jurisdiction over the custody case, it was not a de facto party, its motion to intervene was untimely and would prejudice the parties, and the court would not permit discretionary intervention. NVB filed an appeal of the superior court's order denying its motion to intervene, and we have consolidated Amanda's and NVB's appeals.

## III. STANDARD OF REVIEW

"We evaluate de novo the scope of tribal jurisdiction . . . ."[5] "Under

_____

[5] *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011).

de novo review, we apply 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[6]

## IV. DISCUSSION

Amanda appeals from the superior court's denial of her motion to modify custody, but her arguments are focused mainly on the superior court's jurisdiction. She argues that the superior court erred by concluding that NVB did not possess exclusive jurisdiction over its tribal CINA case; that the superior court failed to communicate with the tribal court regarding its exercise of exclusive jurisdiction; that the tribal CINA case met the definition of an ICWA-defined child custody proceeding; that on remand the superior court must follow the procedure outlined in CINA Rule 24 for registration of a tribal court order; that the superior court erred by failing to grant full faith and credit to the tribal court's orders; and that the superior court's orders must be vacated because they were issued without jurisdiction. NVB makes many of the same arguments in its appeal from the superior court's denial of its motion to intervene.

### A. ICWA's Full Faith And Credit Mandate

ICWA § 1911(d) directs states to grant "full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity."[7]

---

[6]     *Id.* (quoting *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

[7]     25 U.S.C. § 1911(d) (2018); *see also Native Vill. of Tanana*, 249 P.3d at 751 (holding that federally recognized Alaska tribes "are entitled to all of the rights and privileges of Indian tribes under ICWA, including . . . § 1911(d) full faith and credit with respect to ICWA-defined child custody orders to the same extent as other states' and foreign orders.").

In *Simmonds v. Parks* we considered a tribal CINA proceeding in which the Minto Tribal Court terminated a non-Indian father's parental rights.[8] We addressed whether full faith and credit under ICWA § 1911(d) should be granted to a tribal court judgment terminating parental rights.[9] We first asked whether the tribal court proceeding was an ICWA-defined child custody proceeding such that § 1911(d) applied to the tribe's judgment.[10] It was undisputed that the child at issue was an Indian child under ICWA; that she was "eligible for membership in the Native Village of Minto under its tribal law, and she was formally enrolled" as a member; and that "Minto Tribal Court's custody and termination proceedings satisfied ICWA's definition of Indian child custody proceedings."[11] After determining that these three requirements were satisfied, we concluded that "ICWA § 1911(d)'s full faith and credit mandate applie[d]."[12]

We provided guidance to Alaska superior courts in *Simmonds* on the proper steps a court should follow when receiving an order from a tribal court. After articulating the threshold question a superior court must answer when receiving a tribal court order — whether the order was issued in an ICWA-defined child custody proceeding — we provided direction regarding § 1911(d)'s full faith and credit mandate. We explained:

> We will deny full faith and credit to the final judgment of a sister state only in limited circumstances, including situations where (1) the issuing court lacked personal or subject matter jurisdiction when it entered its judgment; or (2) the issuing

---

[8]     329 P.3d 995, 1007 (Alaska 2014).

[9]     *Id.* at 1010.

[10]    *Id.*

[11]    *Id.*

[12]    *Id.*

court failed to render its judgment in accordance with minimum due process.[13]

We reaffirmed that "[a] sister state's judgment is presumed to be entitled to full faith and credit, and the burden of proof is properly on the party challenging the validity of the judgment."[14] We emphasized that "[t]he same presumption and burden apply when a party challenges a tribal court judgment that is entitled to full faith and credit."[15] And finally, we reiterated the presumption that "decisions of tribal courts are sound unless the challenging party can show that the foreign judgment was constitutionally infirm."[16]

In summary, ICWA requires a superior court receiving a tribal court order to determine whether the order was issued in an ICWA-defined child custody proceeding and, if it was, to follow ICWA § 1911(d)'s full faith and credit mandate.

### B. Alaska CINA Rule 24

Adopted with Alaska CINA Rule 25 in October 2014, Rule 24 provides the procedure for registration and confirmation of tribal court orders issued in ICWA-defined child custody proceedings. In a May 2012 memorandum, the court rules attorney explained that CINA Rules 24 and 25 were modeled on the Uniform Child Custody Jurisdiction and Enforcement Act but included several adjustments "to make the rules simpler, more user-friendly, and better attuned to tribal court's needs."[17]

---

[13]     *Id.* at 1011.

[14]     *Id.*

[15]     *Id.*

[16]     *Id.* (quoting *Starr v. George*, 175 P.3d 50, 56 (Alaska 2008)).

[17]     Memorandum from Laura C. Bottger, Court Rules Attorney, to the Justices of the Alaska Supreme Court (May 24, 2012).

CINA Rule 24 contains subsections (a)-(j), which explain the applicability of the rule, the procedure a tribal court "may" follow in registering its tribal court order,[18] and the procedure the superior court must follow in receiving the order, in notifying the relevant parties of the order, and in confirming registration of the order. CINA Rule 24(a) provides that the rule applies "only to orders issued by the tribal court . . . in a 'child custody proceeding' as defined by section 1903(1) of [ICWA], including . . . a 'foster care placement,' 'termination of parental rights,' 'preadoptive placement,' and 'adoptive placement' other than an adoption decree."

NVB first filed the tribal court's April 13, 2017 order in the superior court child custody case on April 21 without including form CN-600 — "Request To Register Tribal Court ICWA Custody Order" — which corresponds to CINA Rule 24's registration process.[19] However, before the superior court issued an order responding to the tribal court's order, NVB filed form CN-600 in a separate superior court case attempting to register the April 13 tribal court order. The superior court issued a one-page order on July 24, responding to NVB's request to register the tribal court order. The superior court acknowledged that NVB filed a notice of registration of a tribal court

---

[18]     As explained below, ICWA § 1911(d) mandates that state courts must grant a tribal court's order, issued in an ICWA-defined child custody proceeding, full faith and credit provided the issuing court had personal and subject matter jurisdiction and rendered its judgment in accordance with minimum due process. *Simmonds*, 329 P.3d at 1011; *see also* CINA Rule 24, editors' notes. While Rule 24 provides the procedure a tribal court *may* follow in registering a tribal court order with a state court, the tribal court choosing not to follow Rule 24's procedure does not relieve a state court from giving effect to ICWA § 1911(d)'s full faith and credit mandate.

[19]     The record does not specify who filed NVB's April 13 order on April 21 in the superior court child custody proceeding, but we assume that NVB filed the order because the record demonstrates that NVB subsequently filed a notice of registration on June 6 and the tribal court's July 26 order on July 27, both in the superior court.

order regarding A.W., but concluded that the "tribal representative did not check one of the boxes pertaining to ICWA placements and termination of parental rights" and that the tribal court "order is invalid because . . . the NVB does not have any jurisdiction in a custody dispute."

However, Rule 24(d)(1)-(2) provides that upon receipt of a tribal court order, the superior court *shall* file the tribal court's order in the same manner as a foreign judgment and distribute notice to the relevant parties. Rule 24(f) explains:

> A person seeking to contest the validity of a registered order must request a hearing within 20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes that:
>
> (1) the tribal court did not have jurisdiction over the parties or the child custody proceeding in which the tribal child custody order was entered;
>
> (2) the child custody order sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so; or
>
> (3) the person contesting registration was entitled to notice, but notice was not given in a manner reasonably calculated to give actual notice of the proceedings before the court that issued the order for which enforcement is sought, or if notice was given, the person contesting registration was not given an opportunity to be heard.

The superior court did not file the tribal court order nor did it provide notice to the relevant parties as required by subsections (d)(1)-(2). If the court had done so, the parties would have had an opportunity to request a hearing where questions of the nature of the tribal court's proceeding and the tribal court's jurisdiction over A.W. could have been formally raised.

## C.    Application To This Case

Amanda and NVB argue in their briefing that the superior court failed to conduct a full faith and credit analysis when it received the tribal court's order in April 2017.  Peter, Vera, and Waska respond that the superior court was not required to grant full faith and credit to the tribal court order because it was not issued in an ICWA-defined child custody proceeding.

The record demonstrates that NVB took emergency custody of A.W. and placed her with her maternal grandmother in September 2015.  The parties agree that the tribal court's 2015 proceeding when A.W. was placed with her maternal grandmother, met the definition of a "foster care placement" under ICWA § 1903(1).  In early October 2015 NVB placed A.W. with Peter in Vera and Waska's home.  Vera and Waska argue on appeal that the tribal court's CINA proceeding no longer met ICWA § 1903(1)'s definition of an Indian child custody proceeding when A.W. was placed in their home.

In its November 2015 interim custody order, the superior court expressly recognized that the tribe initiated a tribal CINA case under the tribal court's jurisdiction when it took A.W. into its custody.  The superior court also recognized that "[NVB] has 25 U.S.C. [§] 1911(a) exclusive jurisdiction to care for its children."  But the superior court went on to conclude that the tribal court "agreed to drop its case so that two independent sovereigns do not each assert custody."  As we previously explained, there is no evidence in the record that the tribal court agreed to drop its case.

In its final custody order, the superior court recognized that "NVB kept [its] case open, asserted custody of [A.W.], and set up visitation and . . . case plans for the parents."  However, after recognizing that the tribal court's CINA case remained open, the superior court failed to consider granting full faith and credit to the tribal court's orders.  The court instead stated at the end of its custody order that "[NVB] has no ability to supersede or modify these conditions, or any other order of this Court, under any

-16-                                                    **7431**

circumstances. The parents are not bound by orders issued by [NVB] *in this case only*." (Emphasis in original.)

As discussed above, ICWA § 1911(d) contains a federal mandate that a state court receiving a tribal court ICWA-defined child custody order must grant full faith and credit to the order, unless one of several narrow exceptions applies.[20] No party asserted — and the superior court did not find — that any of these exceptions applied. On the record before us, we conclude that the superior court erred in ruling that the NVB tribal court lacked jurisdiction without following the procedures underlying the process for giving full faith and credit to a tribal court order.

### D.    Miscellaneous Issues

Amanda also argues that the superior court had no jurisdiction to enter the final custody order in April 2016. But Amanda did not object to the superior court's jurisdiction during the custody proceedings, and she did not appeal the final custody order at the time. It is true that we often say that subject matter jurisdiction may be raised at any time.[21] But this issue is not as simple as the dissent implies. A litigant is not entitled to appeal a final judgment after the deadline for an appeal has passed.[22]

After the deadline for an appeal, a litigant should first raise the jurisdiction issue in the superior court by filing a motion for relief from judgment under Alaska Civil

---

[20]    25 U.S.C. § 1911(d) (2018); *see also Simmonds*, 329 P.3d at 1011 (noting exceptions to full faith and credit include "situations where (1) the issuing court lacked personal or subject matter jurisdiction when it entered its judgment; or (2) the issuing court failed to render its judgment in accordance with minimum due process").

[21]    *See, e.g., Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013).

[22]    *Id.*; *see also Jackson v. Sey*, 315 P.3d 674, 678 (Alaska 2013).

Rule 60(b)(4).[23]   Amanda may choose to file such a motion on remand to raise her arguments about the previous proceedings in the superior court.  This procedure will ensure that all parties have a full opportunity to address the issue.

Even if the jurisdiction issue was properly before us, it would not be as simple as the dissent implies.  The ICWA sections at issue involve tribal jurisdiction over "child custody proceedings."[24]   "Child custody proceedings" include "foster care placement" that could include the tribal court orders in this case.[25]   But an award of custody to one of the parents in a divorce proceeding is not a "child custody proceeding."[26]   Pursuant to ICWA, we have also held that this divorce exception applies to a custody contest between two unmarried parents,[27] which could include the state court custody proceedings in this case.  The grant of exclusive tribal jurisdiction over "child custody proceedings" therefore does not deprive a state court of jurisdiction over a proceeding within the divorce exception because a divorce proceeding is not a "child custody proceeding."[28]   We raise this issue not to resolve it here, but only to demonstrate that both parties should have a full opportunity to litigate this issue in the superior court.

NVB also argues that the superior court erred when it denied its motion to intervene in August 2017.  The superior court concluded that NVB's request was untimely and that the superior court lost jurisdiction when Amanda filed an appeal a few

---

[23]     *Jackson*, 315 P.3d at 678.

[24]     25 U.S.C. § 1911(a).

[25]     25 U.S.C. § 1903(1)(i).

[26]     25 U.S.C. § 1903(1)(iv).

[27]     *John v. Baker*, 982 P.2d 738, 746-47 (Alaska 1999).

[28]     *Id.* at 747.

days after NVB's motion was filed. But we now return jurisdiction to the superior court. NVB may continue to have an interest in participating in any remand proceedings concerning the validity of its tribal court orders. Therefore, NVB may renew its intervention request upon remand, and the superior court should reconsider the issue while conducting a full faith and credit analysis.

## V.    CONCLUSION

The superior court's orders denying recognition of the tribal court orders and denying Amanda's motion to modify custody are VACATED and this matter is REMANDED to the superior court for further proceedings consistent with this opinion.

STOWERS, Justice, dissenting.

> Conflicting decrees from tribal court and state court undermine the authority of each sovereign, produce chaos in the lives of parents, and expose children to discontinuity and prolonged instability.[1]

> * * *

> State-court jurisdiction plainly would interfere with the [Tribe's] powers of self-government . . . . It would subject a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves. As the present record illustrates, it would create a substantial risk of conflicting adjudications affecting the custody of the child and would cause a corresponding decline in the authority of the Tribal Court.[2]

## I. The Native Village Of Barrow Has Exclusive Jurisdiction Over This Indian Child Custody Matter.

I begin my analysis with the black letter law. In general, jurisdiction is "[a] court's power to decide a case."[3] Exclusive jurisdiction is "[a] court's power to adjudicate an action . . . *to the exclusion of all other courts*."[4] Exclusive jurisdiction is to be contrasted with concurrent jurisdiction, which is "[j]urisdiction that might be

---

[1]     BARBARA ANN ATWOOD, CHILDREN, TRIBES, AND STATES: ADOPTION AND CUSTODY CONFLICTS OVER AMERICAN INDIAN CHILDREN 59 (2010).

[2]     *Fisher v. Dist. Court*, 424 U.S. 382, 387-88 (1976) (footnote omitted) (holding state court lacked subject matter jurisdiction over adoption petition involving Indian child because tribal court had exclusive jurisdiction).

[3]     *Jurisdiction*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[4]     *Exclusive jurisdiction*, *id.* (emphasis added).

exercised simultaneously by more than one court over the same subject matter."[5] Subject matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought."[6]

The Indian Child Welfare Act (ICWA) grants tribes exclusive jurisdiction over certain child custody proceedings involving Indian children[7] and provides that "[a]ny . . . tribe which became subject to State jurisdiction . . . may reassume jurisdiction over child custody proceedings."[8] Before a tribe can do so, "such tribe shall present to the Secretary [of the Department of the Interior] for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction."[9] In 1999 the Native Village of Barrow (the Tribe) successfully petitioned the Secretary of the Interior to reassume exclusive jurisdiction over Indian child custody proceedings.[10]

"ICWA creates limitations on states' jurisdiction over ICWA-defined child custody proceedings, not limitations on tribes' jurisdiction over those proceedings."[11] Four proceedings meet the definition of a "child custody proceeding" under ICWA: (1) "foster care placement," (2) "termination of parental rights," (3) "preadoptive

---

[5]     *Concurrent jurisdiction, id.*

[6]     *Subject-matter jurisdiction, id.*

[7]     25 U.S.C. § 1911(a) (2018).

[8]     *Id.* § 1918(a).

[9]     *Id.*

[10]     Approval of Petition for Reassumption of Exclusive Jurisdiction by the Native Village of Barrow, 64 Fed. Reg. 36,391 (July 6, 1999).

[11]     *State v. Native Vill. of Tanana*, 249 P.3d 734, 751 (Alaska 2011).

placement," and (4) "adoptive placement."[12]  A "foster care placement" is defined as "any action removing an Indian child from its parent . . . for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent . . . cannot have the child returned upon demand, but where parental rights have not been terminated."[13]  The Tribe therefore clearly possesses exclusive jurisdiction over Indian child custody proceedings, including tribal CINA cases involving foster care placements.

Here, when the tribal court removed A.W. from her mother's custody and placed her with her grandmother, this was a foster care placement.  At no time during the tribal court CINA proceeding — during which time A.W. was in the Tribe's custody — could either parent demand A.W. be returned to their custody.  The superior court, though acknowledging the Tribe's exclusive jurisdiction over the Native child,[14] repeatedly refused to give effect to the Tribe's exclusive jurisdiction and declared that the tribal court's custody orders were unenforceable in state court.  This resulted in the superior court issuing inconsistent and conflicting custody orders from those issued by the tribal court.

## II.    We Must Address Subject Matter Jurisdiction.

As early as 1868 the Supreme Court held:  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact

---

[12]    25 U.S.C. § 1903(1).

[13]    *Id.* § 1903(1)(I).

[14]    The superior court recognized that "[t]he [Tribe] has 25 U.S.C. 1911(a) exclusive jurisdiction to care for its children."

and dismissing the cause."[15]  In 1872 the Supreme Court held:

> Usually where a court has no jurisdiction of a case, the correct practice is to dismiss the suit, but a different rule necessarily prevails in an appellate court in cases where the subordinate court was without jurisdiction and has given judgment or decree for the plaintiff or improperly decreed affirmative relief to a claimant.  In such a case the judgment or decree in the court below must be reversed, else the party which prevailed there would have the benefit of such judgment or decree, though rendered by a court which had no authority to hear and determine the matter in controversy.[16]

And in 1884 the Court was presented with an appeal from the trial court and determined that it had no jurisdiction, explaining:  "An examination of the record . . . discloses that the [trial] court had no jurisdiction to try the action, and as, for this reason, we are constrained to reverse the judgment, we have not deemed it within our province to consider any other questions involved in [the appeal]."[17]  The Court continued, stating that "the rule . . . is inflexible and without exception which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear."[18]  The Court then announced the fundamental, threshold duty of

---

[15]     *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *accord Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[16]     *United States v. Huckabee*, 83 U.S. (16 Wall.) 414, 435-36 (1872).

[17]     *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 381 (1884); *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("We do not deem it necessary, however, to consider either of these questions [raised on appeal], because, in our opinion, the court below was without jurisdiction of the cause.").

[18]     *Mansfield*, 111 U.S. at 382.

the appellate court: "On every . . . appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested . . . ."[19]

Once the tribal court exercised its exclusive Indian child custody jurisdiction over its Indian child custody case, the superior court was divested entirely of its child custody subject matter jurisdiction and was required to dismiss the case;[20] any order issued thereafter by the superior court was void.[21] Moreover, the Alaska Supreme

---

[19] *Id*.; *see also Mottley*, 211 U.S. at 152 ("Neither party has questioned that jurisdiction, but it is the duty of this court to see to it that the jurisdiction of the circuit court . . . is not exceeded.").

[20] *Cf.* 25 C.F.R. § 21.110 (2020) ("The court in any voluntary or involuntary child-custody proceeding involving an Indian child must determine the residence and domicile of the Indian child. If either the residence or domicile is on a reservation where the Tribe exercises exclusive jurisdiction over child-custody proceedings, the State court must expeditiously notify the Tribal court of the pending dismissal based on the Tribe's exclusive jurisdiction[] [and] dismiss the State-court child-custody proceeding . . . ."). The Native Village of Barrow is not a reservation. But the Department of the Interior has approved the Tribe's petition to reassume exclusive jurisdiction pursuant to ICWA over Indian children "who reside or are domiciled within the Native Village of Barrow," Approval of Petition for Reassumption of Exclusive Jurisdiction by the Native Village of Barrow, 64 Fed. Reg. 36,391 (July 6, 1999), even though the ICWA exclusive jurisdiction provision gives tribes exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." 25 U.S.C. § 1911(a). Although neither party has argued the issue, this suggests that 25 C.F.R. § 21.110 would also apply to children domiciled in the Native Village of Barrow.

[21] *See Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966) ("A judgment is void where the state in which the judgment was rendered had no jurisdiction to subject the parties or the subject matter to its control . . . ." (citing RESTATEMENT (FIRST) OF JUDGMENTS § 5 (AM. LAW INST. 1942))); *see also Leisnoi, Inc. v. Merdes & Merdes,*

(continued...)

Court also has no jurisdiction, except to determine our own jurisdiction.[22] Once we conclude that the Tribe possesses exclusive jurisdiction, our only recourse is to declare that the Alaska courts have no jurisdiction, reverse the superior court's order, and remand the case with instructions to dismiss.

## III. The Mother Does Not Need To File An Alaska Civil Rule 60(b)(4) Motion.

This court ignores the jurisdictional elephant in the room, instead suggesting that the mother may seek to challenge the superior court's jurisdiction on remand by filing an Alaska Civil Rule 60(b)(4) motion.[23] While it is true that Rule 60(b)(4) allows a party to challenge a court's jurisdiction after final judgment, the question of jurisdiction may be raised at any time in a civil action, even for the first time on appeal.[24] Here *the question of the court's jurisdiction has been raised on appeal* and is squarely before us, so Rule 60(b)(4) has no place in this procedural posture.

The court dismisses the mother's argument that the superior court lacked jurisdiction to enter the final custody order in April 2016, concluding that she "did not

---

[21](...continued)
*P.C.*, 307 P.3d 879, 891 (Alaska 2013) (holding a judgment is void if the court had no subject matter jurisdiction).

[22]    RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. c (AM. LAW INST. 1982).

[23]    Op. at 17-18; Alaska Rule of Civil Procedure 60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void."

[24]    *Hawkins v. Attatayuk*, 322 P.3d 891, 894-95 (Alaska 2014) ("The issue of subject matter jurisdiction 'may be raised at any stage of the litigation and if noticed must be raised by the court if not raised by one of the parties.' " (quoting *Hydaburg Coop. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 248 (Alaska 1996))); *see also Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.").

object to the superior court's jurisdiction during the custody proceedings, and she did not appeal the final custody order at the time."[25] While acknowledging "that subject matter jurisdiction may be raised at any time,"[26] the court relies on *Jackson v. Sey*[27] in concluding that "[a]fter the deadline for an appeal, a litigant should first raise the jurisdiction issue in the superior court by filing a motion for relief from judgment under Alaska Civil Rule 60(b)(4)."[28]

In *Jackson* we declined to address a party's argument that his "divorce decree [was] void because of his lack of participation in the . . . evidentiary hearing," instead requiring him to first raise the argument before the superior court through a Rule 60(b)(4) motion.[29] We cited *Juelfs v. Gough*[30] for the proposition that a "party was not entitled to raise grounds for Rule 60(b) relief for the first time on appeal."[31] In *Juelfs* we held that a party could not argue the distribution of money in a dissolution decree was erroneous on appeal given that she did not first bring a Rule 60(b) motion before the superior court.[32] In neither of these cases was the party challenging the superior court's subject matter jurisdiction. This court undercuts the well-established rule that subject matter jurisdiction is a fundamental, threshold issue that can be raised at any time,

---

[25] Op. at 17.

[26] Op. at 17.

[27] 315 P.3d 674 (Alaska 2013).

[28] Op. at 17-18.

[29] 315 P.3d at 677-78.

[30] 41 P.3d 593, 598 (Alaska 2002).

[31] *Jackson*, 315 P.3d at 678 n.12.

[32] 41 P.3d at 598.

including for the first time on appeal,[33] by extending our holdings in *Jackson* and *Juelfs* to Rule 60(b)(4) motions based on lack of subject matter jurisdiction.[34]

The mother timely filed the appeal that is before us and raised a jurisdictional argument in this appeal; as shown above, we have a corresponding duty to address this threshold jurisdictional question. The Tribe possessed exclusive Indian child custody jurisdiction. The superior court therefore had no jurisdiction, nor does this court, and we must reverse the superior court's orders and remand the case with instructions to dismiss. I dissent from the court's opinion.

---

[33]     *Hawkins v. Attatayuk*, 322 P.3d 891, 894-95 (Alaska 2014); *see also Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

[34]     Op. at 17-18.